BOARD OF ASSESSORS OF LYNN *vs*. SHOP-LEASE CO., INC.

Suffolk.    December 4, 1973.—February 12, 1974.

Present:  TAURO, C.J., REARDON, QUIRICO, HENNESSEY, & WILKINS, JJ.

*Taxation,* Real estate tax: assessment, abatement; Assessors. *Value.*

On an appeal by the assessors of a city from a decision of the Appellate Tax Board granting abatements of taxes on certain premises, where the parties stipulated before the board that "substantially all properties assessed . . . were, as a matter of policy, assessed at 30 percent of the

---

[1]There was other evidence that the screen had been forced.

fair cash value of such properties," it was held that the decision must be reversed in that the board, in its formula for capitalizing net earnings in order to arrive at the fair cash value of the premises in question, committed error by using a factor for local real estate taxes which assumed that the taxpayer would have to pay such taxes on the basis of the full fair cash value of the premises, rather than thirty percent thereof [572-573]; the assessors were entitled to relief on the appeal, even though their practice of assessing properties at less than fair cash value was not in conformity to the law, because the taxpayers of the city should not be compelled to suffer a loss of tax revenues to which the city was entitled [572]. REARDON, J., dissenting on the ground that the appeal should have been dismissed by reason of "the lawless conduct of the assessors" disclosed by the record [574-577].

APPEAL from a decision of the Appellate Tax Board.

*James F. Ryan & Paul R. Tierney* for the Board of Assessors of Lynn.

*Nathan T. Wolk* for Shop-Lease Co., Inc.

WILKINS, J. The board of assessors of Lynn appeals from a decision of the Appellate Tax Board (the board) granting abatements of 1970 and 1971 real estate taxes to Shop-Lease Co., Inc. (Shop-Lease). The parties stipulated before the board "that for purposes of this hearing only substantially all properties assessed by the Board of Assessors of the City of Lynn during the years . . . 1970 and 1971 were, as a matter of policy, assessed at 30 percent of the fair cash value of such properties." The premises were leased by Shop-Lease to various tenants for office and retail uses.

The parties in their presentations before the board, and the board in its decision, used a capitalization of net earnings approach to arrive at the fair cash value of the property, and all agreed that the assessed value should be thirty per cent of the fair cash value. The board in its formula for capitalizing net earnings in order to arrive at the fair cash value of the property used a factor for local real estate taxes which assumed that Shop-Lease would have to pay local real estate taxes based on the fair cash value of the premises and not based on thirty per cent of the fair cash value. The sole issue on this appeal is whether the board committed an error of law in its selection of the tax factor to be used in its formula

for the capitalization of earnings.[1]

The specific facts underlying this issue can be stated briefly. The premises were assessed for $216,700 in 1970 and $702,000 in 1971. The Lynn tax rate in 1970 was $200 for each thousand dollars of valuation and in 1971 was $207 for each thousand dollars of valuation.

The board determined that the net income from the premises before any allowance for depreciation, return on investment and local real estate taxes was $154,450. The board used "a 10% factor for return on investment and depreciation." Based on the $200 1970 tax rate (disregarding, as do we in further discussion in this opinion, the slightly higher rate in 1971), the board "allowed a tax factor of 20%." Although the board acknowledged the assessors' argument that the factor should be six per cent (30% of 20%), the board rejected that argument without explanation. The board then arrived at a fair cash value in both years of $514,800 by dividing the net income ($154,450) before any allowance for depreciation, return on investment or taxes, by the combined factor for depreciation, return on investment and taxes (.10 + .20 = .30). This fair cash value was reduced by the board, "[u]sing the 30% ratio agreed to by both parties," producing an assessed value of $154,440. Abatements were accordingly granted.[2]

The board's decision in effect provides an allowance for local real estate taxes of $102,960 (20% of the fair cash value found by it [$514,800]). However, on the basis of the as-

[1]The assessors raised this question in various ways. They objected to the use by Shop-Lease's expert of a tax factor which assumed taxes would be payable on the basis of 100% of the fair cash value, rather than 30% of that amount. They offered evidence that the formula should reflect what they called the effective tax rate (30% of the actual rate) rather than the stated tax rate. The assessors also raised the issue in requests for rulings which were refused by the board. One such request was the following: "5. Where both parties have stipulated that the appellee has assessed its taxable properties during the years in question, at 30% of fair market value (average assessment), then, as a matter of law, the tax factor to be used in computing the fair market value of the subject property by means of the capitalization of net income approach, must be the effective tax rate, namely, the actual tax rate multiplied by the stipulated percentage at which properties are assessed in relation to fair market value."

[2]The failure of the board to arrive at $154,450 (instead of $154,440) after first dividing, then multiplying, $154,450 by .3 we assume was a typographical error or was caused by roundings.

sessed value established by the board's decision ($154,440) the actual 1970 local real estate tax to be paid is only $30,888 (20% of $154,440). Thus that portion of the net income available for depreciation, return on investment and taxes which will be available for other than taxes will be approximately $123,500, rather than $51,480 (10% of the fair cash value found by the board). Such a return would support a higher fair cash value of the property than that found by the board.

The question whether the tax factor should be reflective of the effective tax rate, where it is different from the actual tax rate, has not been considered by this court previously and has been considered elsewhere in only one reported decision of which we are aware. See *New Brunswick* v. *New Jersey Div. of Tax Appeals,* 39 N. J. 537, 545-547 (1963). The issue should not, of course, arise in this Commonwealth. Assessors have a constitutional and statutory duty to tax property at its full and fair cash value. *Bettigole* v. *Assessors of Springfield,* 343 Mass. 223, 230-232 (1961). G. L. c. 59, §§ 38, 52. See *Leto* v. *Assessors of Wilmington,* 348 Mass. 144, 146 (1964); *Shoppers' World, Inc.* v. *Assessors of Framingham,* 348 Mass. 366, 372 (1965). The effective tax rate should, therefore, always be the actual tax rate. Clearly the apparent general practice in Lynn in 1970 and 1971 to assess substantially all property at thirty per cent of its fair cash value was improper under the law of the Commonwealth.

Shop-Lease argues in part that the assessors should not be entitled to benefit from their misdeeds. If, however, the tax factor used by the board was erroneous as matter of law, the taxpayers of Lynn should not be compelled to suffer in effect a forfeiture to Shop-Lease of tax revenues to which the city is entitled. We wish to make it clear nevertheless that a board of assessors which has flagrantly failed to comply with its constitutional and statutory duty to assess all property at its full and fair cash value may expect to receive an unsympathetic reception in this court.

We believe the board committed an error of law in using a

tax factor which failed to reflect the tax which would be payable as the result of its decision. The purpose of a tax factor, in a formula for capitalizing earnings, is to reflect the tax which will be payable on the assessed valuation produced by the formula. See *Assessors of Lynnfield* v. *New England Oyster House, Inc.* 362 Mass. 696, 700, fn. 2 (1972). Where the fair cash value determined by capitalization of earnings is to be reduced in arriving at the assessed valuation, the tax factor must be proportionately reduced. This is the practice indorsed in *New Brunswick* v. *New Jersey Div. of Tax Appeals,* 39 N. J. 537, 546-547 (1963). See to the same effect Ancel, Determining Fair Market Value of a Shopping Center for Purposes of Property Tax Assessment, U. of Ill. Law Forum, 253, 260 (1965); Keith, Property Tax Assessment Practices, 514 (1966); Nelson, Real Estate Taxes and Value, The Appraisal Journal, 41, 43 (January, 1966).

We decline to accept the argument of Shop-Lease that the stipulation concerning assessment practices in Lynn, on which Shop-Lease relied to establish its claim of disproportionality of assessments, is not sufficiently broad so as to establish that the effective 1970 tax rate in Lynn was not a rate of $200 for each thousand dollars of assessed valuation but only thirty per cent of that rate. In the face of the stipulation, and in the absence of any evidence to the contrary, the board would not have been warranted in concluding that persons buying and selling real estate in Lynn in 1970 and 1971 did so believing that the effective tax rate was $200 for each thousand dollars of assessed valuation.

We are not concerned here with the question whether there is substantial evidence supporting the board's decision. Clearly Shop-Lease's expert used in his formula the same tax factor (20%) which was adopted by the board in its decision. Here, however, the dispute concerning the proper tax factor is not one where expert testimony is decisive. The dispute involves the proper implementation, in a mathematical sense, of a principle on which there can be no reasonable disagreement, once it is established that the effective tax rate differs from the actual tax rate.

From what we have said, the appeals must be remanded to the board. We note, however, that there may have been determinations by the board adverse to Shop-Lease, and even more favorable to the assessors than indicated by the assessors' own evidence, which might have been appealed by Shop-Lease if the board had not reached the decision it did concerning the tax factor. For example, without explanation, the board arrived at annual expenses of $20,550 to be deducted from the annual gross income from the property, although witnesses for both Shop-Lease and the assessors arrived at expenses in excess of $43,000. We believe it is appropriate for the board in its determination of the issues to reconsider all aspects of its decision.

The decision of the Appellate Tax Board is reversed. The case is remanded to the board for further proceedings in conformity with this opinion.

*So ordered.*


REARDON, J. (dissenting). I must respectfully dissent from the majority opinion. In my view, having considered the stipulation of the parties, the court should have dismissed the appeal out of hand.

The basis for the holding of the majority is that the board erroneously applied the capitalization of earnings method in valuing Shop-Lease's property. Specifically, it is held that the tax factor employed should have been reduced to reflect the fact that property in Lynn is assessed at well under full and fair cash value. This derives from the stipulation of the parties that in the relevant period "substantially all properties . . . were . . . assessed at 30 percent of the fair cash value of such properties." This stipulation, which provides the factual keystone of the majority's opinion, means that the parties have stipulated that the assessors have acted in violation of G. L. c. 59, § 38,[1] requiring assessors to make a

---

[1] "The assessors of each city and town shall at the time appointed therefor make a fair cash valuation of all the estate, real and personal, subject to taxation therein, and, in cities, the assessors may, in any year, divide the city into convenient assessment districts."

"fair cash valuation" of all property subject to taxation. They have stipulated that the assessors have falsely certified to the correctness of valuation lists, G. L. c. 59, § 52,[2] and have violated their oaths of office, G. L. c. 41, § 29.[3] As the majority note, this court has repeatedly stressed the duty of assessors to tax property at its full and fair cash value.[4] See *Bettigole* v. *Assessors of Springfield,* 343 Mass. 223, 230-232 (1961); *Leto* v. *Assessors of Wilmington,* 348 Mass. 144, 146 (1964); *Shoppers' World, Inc.* v. *Assessors of Framingham,* 348 Mass. 366, 372 (1965). On this record I believe it is improper for this court to grant the assessors the relief they request. Notwithstanding its criticism of the assessment practices, in its decision the court effectively ratifies the lawless conduct of the assessors and even rewards it by requiring the board to make that illegality part of its valuation calculations.

---

[2]"The assessors, or other persons authorized to assess taxes, shall, at the end of said valuation list, subscribe the following statement:

"We, the assessors (or other persons so authorized, as the case may be,) of          , do severally state, that the foregoing list is a full and true list of the names of all persons known to us, who are liable to taxation in          , (here insert the name of the city or town,) during the present year, and that the real and personal estate contained in said list, and assessed upon each person in said list, is a full and accurate assessment upon all the property of each person, liable to taxation, at its full and fair cash value, according to our best knowledge and belief. This statement is made under the penalties of perjury.

"Failure to subscribe the foregoing statement shall not invalidate a tax otherwise legally assessed; but whoever assesses taxes in a town without having subscribed the same shall be punished by a fine of ten dollars."

[3]"Any person chosen to assess taxes or to determine or to assist in determining the value of property for the purpose of taxation shall, before entering upon the performance of his duties, take the following oath:

"I, having been chosen to assess taxes and estimate the value of property for the purpose of taxation for the town (or city) of          for the year (or years) ensuing, do swear that I will truly and impartially, according to my best skill and judgment, assess and apportion all such taxes as I may during that time assess; that I will neither overvalue nor undervalue any property subject to taxation, and that I will faithfully perform all the duties of said office.

"If he neglects to take such oath before entering upon the performance of his duties, he shall forfeit not more than fifty dollars."

[4]The stipulation in this case is in contrast with the situation outlined in *Shoppers' World, Inc.* v. *Assessors of Framingham,* 348 Mass. 366 (1965), in which the court noted, at 371: "Indeed, it is unlikely that a public board would formally adopt, by a vote set forth in its official records, a wholly illegal practice, such as a policy of assessing all land at less than 100% of full fair cash value." The assessors have shown no such becoming modesty here. Not only do they stipulate as to their illegal practice but urge it upon the court as the very basis of their claims.

The court is not at the mercy of the parties' stipulations when those stipulations are offensive to law. *Rubinstein* v. *Rubinstein,* 319 Mass. 568, 574-575 (1946). *Commonwealth* v. *Clarke,* 350 Mass. 721, 722 (1966). It is not bound to adjudicate any matter which the parties bring before it by way of agreed facts. When, as in this case, they present a situation rife with illegality, the same considerations of public policy which cause a court to refuse to decide rights under an illegal contract should cause it to withhold the exercise of its powers.[5] "The plaintiff comes as a participant in a violation of law by the making of an illegal contract. The court will give him no relief from the consequences of his participation in an unlawful act." *Downey* v. *Charles S. Gove Co.* 201 Mass. 251, 252 (1909). The same principle should apply with even greater vigor here where the complaining party has perpetrated a blatant illegality in violation of a public trust. It is no part of this court's duty to assist the assessors in obtaining the optimal benefit from their unlawful method of taxation.

It is true that in *Shoppers' World, Inc.* v. *Assessors of Framingham,* 348 Mass. 366 (1965), the court held that the proper remedy for a taxpayer whose property had been disproportionately assessed in relation to other property was an abatement which would effectively reduce his assessment to the proportion of other assessments even when this would result in valuing all property at less than full cash value. *Id.* at 377. In those circumstances, however, the compelling need to provide a remedy for the taxpayer who was the victim of discrimination outweighed the harm resulting from the departure from the statutorily required full cash assessment. *Id.* at 376. It was more just in that situation to provide the remedy and to abide the illegality than to remit the taxpayer to alternative means which might have attacked illegal procedures but would probably have negated prompt individual relief.

---

[5]"The rule of law is of universal operation, that none shall, by the aid of a court of justice, obtain the fruits of an unlawful bargain." *Russell* v. *DeGrand,* 15 Mass. 35, 39 (1818).

Here the court faces no such " ' 'dilemma.' " *Id.* at 372. The party seeking relief from this court is not a taxpayer suffering under an illegal system but rather the assessors who are the authors of the illegality. Adding insult to injury, the assessors insist that the board should have fully assimilated this illegal method of assessment into its valuation. In these circumstances the assessors have no good cause to bemoan any unjust treatment.

The majority correctly point out that failure to reverse the board would create a proportionate overassessment on other taxpayers of Lynn relative to Shop-Lease. But this discrimination is a consequence of the failure of the Lynn assessors to perform their statutory duty. G. L. c. 59, § 52; c. 41, § 29. Fair distribution of the tax burden would be a natural consequence of the full cash valuation required by law. The assessors in effect are asking this court to take a thoroughly illegal system and to adjudicate proportionality within its unlawful context. To do so is to pervert the functions of the court. The result is also prejudicial to the efforts of those assessors in cities and towns of the Commonwealth where an effort is made to comply with the law. See, e.g., G. L. c. 58, §§ 9-10C, 18C. The statement of the majority that flagrant failure by assessors to comply with their constitutional and statutory duty to assess all property at its full and fair cash value will produce an unsympathetic reception in this court impels me to observe that such conduct should lead us to afford them here no reception at all. This court should apply its powers in support of equity on the request of assessors only when there is a showing that they have complied with the statutes which govern their activities.

If the assessors are truly concerned with equity among the taxpayers of Lynn, they have a simple remedy at hand: that is to obey the law. I would not give them the relief they have sought.