Board of Taxation
No. 7307

T. A. DEMOULAS,
TRUSTEE OF DELTA & DELTA REALTY TRUST

v.

TOWN OF SALEM

December 30, 1976

*Sullivan, Gregg & Horton* and *Goldman, Curtis, Cashman, Leahey, Adams & Latham* (of Massachusetts) (*Mr. Sherman D. Horton, Jr.,* and *Mr. Robert H. Goldman* orally) for the plaintiff.

*Soule, Leslie & Bronstein* and *Gerald M. Zelin (Mr. Zelin* orally) for the defendant.

KENISON, C.J. This is an appeal from the board of taxation's denial of an abatement and its subsequent denial of the plaintiff's motion for rehearing. The dispute involves the real estate taxes for the Salem Plaza, a shopping center in Salem, New Hampshire. The Board of Assessors for the Town of Salem assessed the value of the property at $2,029,720. At this value, the plaintiff's taxes were $102,500.86. On October 29, 1974, plaintiff applied to the board of assessors for an abatement (RSA 76:16) but the board took no action. One month later, the plaintiff paid the assessed tax. On February 27, 1975, well within the six-month statutory time limit, the plaintiff appealed to the New Hampshire Board of Taxation. RSA 76:16-a I (Supp. 1975). The board held a hearing and, on July 17, 1975, denied the appeal for an abatement. Believing that RSA ch. 541 applied, plaintiff moved for a rehearing on July 31, 1975, thereby satisfying that statute's twenty-day limit for filing for rehearings. RSA 541:3. Three weeks later the board denied the motion. On September 9, 1975, which was more than thirty days after the denial of the abatement but less than thirty days after the denial of the motion for rehearing, the plaintiff appealed both decisions to the supreme court under RSA 76:16-a V (Supp. 1975).

## I. The Statute of Limitations

The first issue in this case is whether the appeal from the denial of the abatement is untimely under RSA 76:16-a V (Supp. 1975) which states that "[e]ither party aggrieved by the decision of the board of taxation may, within thirty days after notice in writing of the decision of the board of taxation, file notice of appeal to the supreme court . . . ." The problem is that the statute does not specify which decision of the board triggers the running of the thirty-day limitation. Relying upon the fact that RSA ch. 76 does not provide for rehearings in tax abatement cases and upon the policy of resolving tax disputes quickly, the town argues that the legislature intended the thirty-day limit in RSA 76:16-a V (Supp. 1975) to run from the date of the original decision on abatement. Under this reading, the September appeal from the July 17 decision denying abatement would be untimely and the only question before this court would be the propriety of the board's refusal to grant a rehearing. *See* 2 F. Cooper, State Administrative Law 583 (1965).

RSA 71-B:12 (Supp. 1975) provides that decisions of the board of taxation are appealable only in accordance with the provisions of RSA ch. 541. Under RSA 541:3 a party aggrieved by an agency's decision may apply for a rehearing, and under RSA 541:4 such application is a prerequisite to an appeal to this court. Because no statute excludes tax abatement proceedings from the blanket mandate of RSA 71-B:12 (Supp. 1975), the plaintiff argues that filing for a rehearing in accordance with RSA ch. 541 was proper and that "the" decision that must be appealed within thirty days under RSA 76:16-a V (Supp. 1975) is the denial of a rehearing or the decision after a rehearing is held.

In support of this position the plaintiff relies upon language in recent opinions. In *Paras v. Portsmouth*, 115 N.H. 53, 335 A.2d 304 (1975), the board of taxation ordered a partial abatement, reheard the case months later and affirmed its earlier decision. With respect to the board's decision after the rehearing, the court stated: "Following this final decision, the petitioner perfected appeals to this court pursuant to RSA 76:16-a (Supp. 1973) *and RSA ch. 541.*" *Id.* at 64, 335 A.2d at 305 (emphasis added). Moreover, in *Dartmouth Corp. of Alpha Delta v. Hanover*, 115 N.H. 26, 27, 332 A.2d 390, 390 (1975), decided just six months prior to the instant plaintiff's decision to apply for a rehearing, we cited RSA ch. 541:3, :6 in a manner suggesting that the filing provisions of RSA

ch. 541 controlled rehearings and appeals in tax abatement matters. *Dartmouth* was an appeal from a denial of a rehearing. The taxpayer did not appeal the abatement decision within thirty days. Nevertheless, we reviewed the merits of the plaintiff's request for an abatement; we did not limit our review to, nor even consider the propriety of, the denial of a rehearing.

Neither *Paras* nor *Dartmouth* addressed the distinctions raised here and thus the extent to which the plaintiff may justifiably rely upon them is somewhat limited. Nevertheless, the lack of clarity in the statutory scheme and in the cases created a procedural imbroglio which, in these unique circumstances, will not prevent consideration of the merits of plaintiff's case. The town strongly urges that, regardless of the outcome of this case, the court should take this opportunity to clarify the law so as to benefit both taxpayers and the board of taxation. Therefore, in order to comply with this request and prevent further confusion, the following procedural rules shall apply prospectively in all tax cases in which the board has not disposed of the petition for abatement as of thirty days after the date of this decision.

The party aggrieved by the board's grant or denial of a tax abatement must appeal that decision within thirty days of the date of notice of the order, even though he requests a rehearing as hereinafter provided. RSA 76:16-a V (Supp. 1975). Under *Vickerry Realty Co. Trust v. Nashua,* 116 N.H. 536, 364 A.2d 626 (1976), which was decided after oral arguments in this case, we stated that a motion for rehearing under RSA 541:4 is not a prerequisite to appealing to this court. *But compare* RSA 71-B:12 (Supp. 1975): "Decisions of the board may be appealed by either party only in accordance with the provisions of RSA 541 . . . ." However, a party may seek a rehearing. Such administrative reconsiderations are desirable because they permit the agency to correct its own errors. *Meinhardt Cartage Co. v. Ill. Commerce Comm.,* 15 Ill. 2d 546, 155 N.E.2d 631 (1959); *Cobb v. Public Service Comm.,* 12 Wis. 2d 441, 458, 107 N.W.2d 595, 604 (1961).

If a party does desire a rehearing, some set of rules should control the application, disposition and appeal processes. We hold that, when a party aggrieved by the board of taxation's decision on abatement applies for a rehearing, the board and the party must comply with the relevant provisions of RSA ch. 541. For the purposes of such rehearings, the twenty-day limit of RSA 541:3 will begin to run from the date of the written notice of the board's decision. Thus, the thirty-day limit for appeals under RSA

76:16-a V (Supp. 1975) and the twenty-day limit for rehearing petitions will commence concurrently. Within thirty days after the date of notice of the board's decision to deny a rehearing, or if the application is granted, then within thirty days after the decision on such rehearing, the aggrieved party may appeal that order to the supreme court. RSA 541:6. If a rehearing is granted and the board does not change its decision, the aggrieved party may either appeal that second board decision within thirty days of the date of notice or, if his appeal from the board's original decision is still pending before this court, he may file a supplemental brief stating his objections to the board's post-rehearing decision. If, however, after rehearing, the board does alter its abatement decree, the party aggrieved by that change may appeal within thirty days after the date of written notice.

The board's abatement ruling is, of course, analytically distinct from its decision whether to rehear a case. In the future we will adhere to this distinction by not considering, as we did in *Dartmouth*, the propriety of the abatement decision in an appeal from a denial of a rehearing. The scope of review over the abatement ruling is controlled by RSA 76:16-a V (Supp. 1975). *Dartmouth Corp. of Alpha Delta v. Hanover*, 115 N.H. at 27-28, 332 A.2d at 391. The standard of review over the rehearing decision is whether the board abused its discretion. *United States v. I.C.C.*, 396 U.S. 491, 520-21 (1970); *Radio Corp. of America v. United States*, 341 U.S. 412, 420-21 (1951).

Under this scheme, an appeal from the abatement decision may be pending while the board considers whether to alter its order in some respect. Far from being anomalous as the plaintiff suggests, this situation was contemplated by the legislature, and RSA 541:16 provides an adequate solution to problems that might arise. Administrative reconsiderations of tax decisions will not postpone judicial review. *Missionaries of La Salette Corp. v. Enfield*, 116 N.H. 274, 356 A.2d 667 (1976). Although these procedures may be somewhat complicated, they are consistent with the statutory scheme. By separating the appeals, the court may properly review the various analytically distinct decisions of the board of taxation. Moreover, the rules promote quick resolution of tax disputes. Finally, and perhaps most importantly, these procedures replace the uncertainties that have existed in tax abatement appellate procedure.

## II. The Merits

In estimating market value for the purposes of taxation, no single method of evaluation is controlling in all cases *(Dartmouth Corp. of Alpha Delta v. Hanover,* 115 N.H. 26, 332 A.2d 390 (1975)), but all relevant factors to property value should be considered. *Paras v. Portsmouth,* 115 N.H. 63, 67-68, 335 A.2d 304, 308 (1975). The plaintiff relies upon the capitalization of net income approach on the ground that the income producing quality of a shopping center is the most relevant factor a willing buyer would consider in determining the market value of the property. Ancel, *Determining Fair Market Value of a Shopping Center for Purposes of Property Tax Assessment,* 1965 U. Ill. L. Forum 253; Annot., 96 A.L.R.2d 666, 669 (1964). Supposedly using the capitalization of net income method, the plaintiff's appraiser multiplied the actual net income for 1970 ($183,451) by 5.15 and arrived at $944,722 which he rounded off to $945,000.

In its opinion denying a rehearing, the board intimated that the plaintiff's appraisal was unpersuasive. With this conclusion we cannot disagree. First, even though the taxes were for 1974 and the computation was made in 1975, the appraiser, without explanation, employed the net income for the year 1970. Second, he did not explain how he arrived at the 5.15 figure which he used in his computation. Third, he did not employ the capitalization of net income method correctly. The proper way to capitalize net income is to divide the net income by a capitalization factor, G. Lefcoe, Land Development Law, Cases and Materials 114 (1966), which is expressed as a percent. *See, e.g., Humble Oil Co. v. Englewood Cliffs,* 135 N.J. Super. 26, 34, 342 A.2d 560, 565 (Super. Ct. 1975); Ancel, *supra* at 259-61. The plaintiff would have this court and the board believe that his appraisal is based upon a capitalization factor of 5.15 percent — a rate he claims is very unfavorable to him. However, if the appraiser did use a 5.15 percent factor, the value of his property, even using the 1970 net income, would have been computed to be $3,562,155, because $183,451 (1970 net income) divided by 5.15 percent (capitalization factor) equals $3,562,155. Instead of dividing by 5.15 percent, however, the appraiser multiplied the net income by the whole number 5.15 and arrived at the $945,000 figure. This process of multiplying net income by the whole number 5.15 is mathematically equivalent to dividing by 19.22 percent — a capitalization rate which is unduly favorable to the taxpayer for

taxation purposes.

The improper multiplication was not raised by the board but the plaintiff admits that his appraisal was inaccurate because 1970 income was used. He argues, however, that, even if he applied the formula correctly, the board would have rejected his appraisal as a matter of law. Several leases for space in the shopping center are long term and have become very unprofitable for the plaintiff due to changed economic conditions. Thus, the actual income derived from the property is less than capacity income. In its opinion denying an abatement, the board took the position that the market value of commercial rental property was based upon the capacity income the property could generate and not the actual income derived. Then it stated: "A long term lease for an unfavorable rent may impair the selling price but the valuation of the property for local taxation cannot vary with the managerial successes or failures of the owners."

This rule of law was taken from the dissent in *Royal Gardens Co. v. Concord,* 114 N.H. 668, 328 A.2d 123 (1974). The majority held that, for the purpose of determining the market value of a federally subsidized and regulated low income housing project, the master should have considered the regulations which required the project owner to charge below-market rents and which limited the rate and amount of return on investment. Both the majority and the dissent agreed that, in estimating the value of property owned by public utilities, state and federal control of income is taken into account. *New England Power Co. v. Littleton,* 114 N.H. 594, 603-04, 326 A.2d 698, 704 (1974); *Public Service Co. v. New Hampton,* 101 N.H. 142, 136 A.2d 591 (1957).

The majority did not disagree with the general rule stated by the dissent and relied upon by the board of taxation that, with respect to nonregulated privately owned commercial property, the general rule is that it is the capacity for earning income not actual income that reflects the fair cash value for the purpose of taxation. *Marine Bank v. Tax Appeal Bd.,* 44 Ill. 2d 428, 256 N.E.2d 334 (1970); *Crossroads Center, Inc. v. Commissioner of Taxation,* 286 Minn. 440, 176 N.W.2d 530 (1970); *New Brunswick v. State of New Jersey Division of Tax Appeals,* 39 N.J. 537, 189 A.2d 702 (1963); *Kargman v. Jacobs,* 113 R.I. 696, 705, 325 A.2d 543, 548 (1974). The principal dispute centered upon whether a federally regulated but privately owned housing project should be treated like the property of a utility or that owned by a wholly private enterprise. Thus the fact that the statement of the rule for unregulated

private property happened to appear in the dissent did not prevent the board from applying the rule in a clearly appropriate case. We do not mean to suggest that consideration of actual income is improper in all cases. We hold only that, where the actual income from long term leases does not reflect the true value of the property because the leases were made in a time of boom or depression or as a result of poor management, the board may reject or give little weight to the capitalization of actual net income method. Cases *cited* in Annot., *Income or Rental Value as a Factor in Evaluation of Real Property for Purposes of Taxation,* 96 A.L.R.2d 666, 669-70, 678-79 (1964).

Although the plaintiff's evidence was properly rejected, we still cannot sustain the board's decision because the record does not indicate what method was used to value the plaintiff's property nor how the board arrived at the two million dollar figure. Without fact findings we cannot determine whether the decision of the board was made in accordance with the law or whether the taxpayer sustained his burden of proving that the assessment on his property was disproportionately greater than that imposed upon other property in the area. *Trustees of Lexington Realty Trust v. Concord,* 115 N.H. 131, 132-33, 336 A.2d 591, 591-92 (1975). The failure of the plaintiff's counsel to request fact findings does not constitute waiver. *Id.* at 134, 336 A.2d at 593. The proper procedure is to remand for the limited purpose of making the necessary findings. *Mann v. Nashua & Fournier v. Nashua decided in Vickerry Realty Co. Trust v. Nashua,* 116 N.H. 536, 364 A.2d 626 (1976); *Trustees of Lexington Realty Trust v. Concord supra; Society for Protection of N.H. Forests v. Site Evaluation Comm.,* 115 N.H. 163, 174-75, 337 A.2d 778, 787 (1975).

*Remanded.*

GRIMES and BOIS, JJ., did not sit; the others concurred.