COMMONWEALTH & others[1] vs. TOWN OF ANDOVER & others.[2]

Suffolk. May 24, 1979. — July 3, 1979.

Present: HENNESSEY, C.J., QUIRICO, BRAUCHER, & WILKINS, JJ.

*Taxation*, Real estate tax: revaluation; Assessors, Commissioner of Revenue. *Commissioner of Revenue. Practice, Civil,* Parties, Summary judgment, Counterclaim, Report. *Municipal Corporations*, Municipal finance.

In an action by the Commonwealth against certain municipalities which had failed to appropriate funds necessary to comply with the

---

[1] This action was commenced in March, 1978, in the name of the Commonwealth on behalf of the Commissioner of Corporations and Taxation, the State Tax Commission, and the State Treasurer. On August 1, 1978 (see St. 1978, § 287), a Department of Revenue, headed by the Commissioner of Revenue, replaced the Commissioner of Corporations and Taxation and the State Tax Commission. See St. 1978, c. 514, § 5, revising G. L. c. 14. References in this opinion to the Commissioner shall include the Commissioner appointed under the 1978 act and her predecessors.

[2] There were originally twenty-three defendant municipalities. Since the commencement of this action, ten of these defendants have appropriated funds to implement revaluation plans approved by the Commissioner, and they have been dismissed as parties to this proceeding. These municipalities are Bolton, Georgetown, Hadley, Ludlow, Millis, Norfolk, North Adams, Norwell, Paxton, and Provincetown.

The thirteen remaining municipalities are Andover, Blackstone, Brookline, Fairhaven, Lawrence, Nahant, New Bedford, Quincy, Saugus, Spencer, Swampscott, Swansea, and Weymouth. We were advised at oral argument that the towns of Andover, Nahant, and Spencer have appropriated funds for a revaluation of their real property. The Attorney General has assented to motions to dismiss the action as to them. Additionally, we were advised that the towns of Blackstone, Brookline, and Weymouth have appropriated funds for the same purpose. The Attorney General has under advisement the question whether to assent to a similar dismissal as to them.

constitutional and statutory duty to value real property proportionately and reasonably and at its full and fair cash value, the Commonwealth was not required to join as defendants other municipalities in similar positions. [373-374]

A single justice of this court did not exceed his discretion in denying a belated, dilatory motion for leave to file a counterclaim where he could have concluded that justice did not require the late filing of the counterclaim and that the failure to file it earlier was not a result of oversight, inadvertence, or excusable neglect. [374-375]

Under Rule 64 of the Massachusetts Rules of Civil Procedure, a single justice of this court had the authority to report the issues presented by a motion for summary judgment. [375-376]

In an action by the Commonwealth against certain municipalities for failure to appropriate funds for revaluation plans which had been approved by the Commissioner of Revenue, there was no genuine issue as to any material fact. [377]

The Commissioner of Revenue has no authority to contract with appraisal firms to value the real estate in municipalities which have failed to appropriate funds to achieve appropriate revaluation, at the expense of the municipalities and without their consent. [377-378]

It is within the power of this court to order that various steps be taken to assure the proper valuation of real estate in accordance with constitutional and statutory mandates, including authorizing the Commissioner of Revenue to contract for revaluation services and direct that the cost be imposed on a city or town. [378-380]

CIVIL ACTION commenced in the Supreme Judicial Court for the county of Suffolk on March 8, 1978.

The case was reported by *Liacos*, J.

*John E. Bowman, Jr.*, Assistant Attorney General (*James A. Aloisi, Jr.*, Assistant Attorney General, with him) for the Commonwealth & others.

*David Lee Turner* for the town of Brookline.

*Jason A. Rosenberg* for the town of Weymouth & others.

*David A. McLaughlin* for the city of New Bedford.

*Bradbury Gilbert*, Town Counsel, for the town of Saugus.

*Thomas Crotty* for the town of Fairhaven.

WILKINS, J. The assessors of each defendant municipality have submitted a plan to the Commissioner of Revenue (Commissioner) for the revaluation of that munici-

pality's real property in order to comply with the consti-
tutional and statutory duty to value that property pro-
portionately and reasonably and at its full and fair cash
value. See Part II, c. 1, § 1, art. 4, of the Massachusetts
Constitution; G. L. c. 59, § 38; *Tregor* v. *Assessors of Bos-
ton,* 377 Mass. 602, 604 (1979); *Sudbury* v. *Commissioner
of Corps. & Taxation,* 366 Mass. 558, 563 (1974), and cases
cited. Cf. art. 10 of the Declaration of Rights. The Com-
missioner has indicated approval of the revaluation plan
submitted by the assessors of each defendant. In each
such municipality, however, no funds have been appro-
priated to carry out the plan as filed or to achieve appro-
priate revaluation in some other manner. See note 2 as
to recent action in six defendant towns.

The Commonwealth seeks a determination that the
Commissioner may contract with commercial appraisal
firms to revalue the real estate in each noncomplying city
and town and that the State Treasurer may deduct the
cost of that contract from the amount of State aid that he
would otherwise distribute to that municipality. We con-
clude that the Commissioner and the State Treasurer do
not have the statutory authority to proceed as indicated
without a court order authorizing that action, but that it
is within the power of this court to order that various
steps be taken to assure the proper valuation of real es-
tate in accordance with constitutional and statutory
mandates. No municipality may block the attainment of
its constitutional and statutory obligation to achieve fair
cash valuation by failing to appropriate funds necessary
to achieve that goal. We order the entry of a judgment in
conformity with our conclusions, and direct that a single
justice of this court enter such orders with respect to each
noncomplying municipality as, in his discretion, will as-
sure the prompt and proper valuation of its real estate.

Before discussing our reasons for our conclusions on
the fundamental issue in this case, we shall dispose of
contentions of certain defendants who argue that this
court cannot and should not order the entry of a judg-

ment at this time. We do not pause to indicate which defendants have raised specific objections because, as we reject them all, the source of those objections is irrelevant.

*The failure to join other municipalities.* Certain defendants argue that the Commonwealth has unconstitutionally denied them equal protection of the laws by failing to include other municipalities as defendants. Specifically, they have challenged a single justice's allowance of the Commonwealth's motion for partial summary judgment on the issue of failure to join other municipalities as necessary parties. See Mass. R. Civ. P. 19, 365 Mass. 765 (1974). In the complaint, the Commonwealth alleged that there are additional cities and towns that "are in positions similar to those of the defendants but as to whom insufficient data [are] currently available to the Commissioner to warrant their joinder in this action." The complaint listed twenty-eight such municipalities but did not state the nature of the missing data.

The single justice properly allowed the Commonwealth's motion for partial summary judgment. The requirements for joinder, set forth in Mass. R. Civ. P. 19, are not met here. Joinder of additional parties is not necessary to accord complete relief among those already parties, and, as a practical matter, the ability of any other municipality to protect its interest in formulating and implementing its own revaluation plan will not be impaired by this action. *Id.*

In a related claim, certain defendants accuse the Commissioner of selective enforcement of the law and allege that such a course of action precludes the effective implementation of the *Sudbury* decision. None of the affidavits submitted in opposition to the Commonwealth's motion for partial summary judgment contains any statement of fact to support the allegation that the Commissioner is engaged in a discriminatory, selective enforcement of the law. On the contrary, the affidavit filed in behalf of the Commonwealth's motion demonstrates

that the Commissioner is aggressively pursuing every municipality that has not fulfilled its obligation to revalue all its real property at full and fair cash value. The Commonwealth was not obliged to sue every noncomplying municipality in one action. Nor was it required to postpone suing any municipality until it could accumulate sufficient data to identify all the municipalities that had reached the same stalemate as the defendants. Such a restraint on the Commissioner's discretion would only delay final implementation of the *Sudbury* mandate.

*Denial of leave to file a counterclaim late.* The single justice did not exceed his discretion in denying the belated, dilatory motion for leave to file a counterclaim and the motion to transfer the case to the Superior Court, or to refer it to a special master, to consider the issues sought to be raised by the counterclaim.[3] Mass. R. Civ. P. 13 (f), 365 Mass. 758 (1974). The single justice could have concluded that justice did not require the late filing of the counterclaim and that the failure to set up the counterclaim earlier was not a result of "oversight, inadvertence, or excusable neglect." *Id.* These motions were filed almost one year after the action was commenced. The Commonwealth had already filed a motion for summary judgment with supporting documents. The proposed counterclaim raised objections to the Commissioner's alleged failure (a) to take adequate steps to assure implementation and maintenance of fair and uniform revaluations, and (b) to approve or reject revaluation plans rationally. To the extent that these objections applied to the Commissioner's treatment of individual defendants, the alleged deficiencies would have been known

---

[3] The defendants sought to have the case referred for findings of fact on other issues as well. Even if there had been a dispute as to any material fact, the single justice would not have been obliged to transfer the case to the Superior Court or to refer it to a special master. We shall subsequently consider whether there was a genuine dispute as to any material fact when we discuss the merits of the Commonwealth's motion for summary judgment.

to them for months prior to the filing of these motions. Deficiencies, if any, in the Commissioner's treatment of some other municipality cannot justify a failure of a defendant municipality to perform its duty. Moreover, the suggestion that the Commissioner had not taken adequate steps to permit municipalities to perform these obligations is belied by the fact that almost 300 cities and towns have complied with their valuation obligations or have plans to do so, approved by the Commissioner and appropriately funded. The fact that the Commonwealth might have done more to assist in the development of procedures for the formation and maintenance of adequate valuation plans cannot be a defense to this action.[4]

*The propriety of the report.* After ruling that there was "no genuine issue as to material facts," a single justice reserved and reported the case to the full bench. By his report, he submitted to the full court the question whether interlocutory orders entered by single justices, and already discussed in this opinion, were proper, and whether his ruling that there was no genuine issue as to any material fact was correct. By reporting the case in its present posture he also referred to the full court the question of the appropriate disposition of the Commonwealth's motion for summary judgment, assuming the correctness of the interlocutory rulings.

The defendants argue that the single justice had no authority to report the issues presented by the Commonwealth's motion for summary judgment and that this court has no jurisdiction to hear and act on that motion. The defendants do not challenge the report of the inter-

---

[4] The suggestion of certain defendants that they were entitled to delay presenting their counterclaim because of the pendency of the proposed classification amendment on the ballot for the November, 1978, State election is without merit. That amendment, which was adopted, has no bearing on the obligation of cities and towns to determine the full cash value of their real estate. See Part II, c. 1, § 1, art. 4, of the Massachusetts Constitution, as amended by art. 112 of the Amendments.

locutory rulings. Such a report is expressly authorized by G. L. c. 231, § 112.[5]

The single justice properly reported the Commonwealth's motion for summary judgment to this court. Rule 64 of the Massachusetts Rules of Civil Procedure, 365 Mass. 831 (1974), provides "that a single justice of the Supreme Judicial Court may at any time reserve any question of law for consideration by the full court, and shall report so much of the case as is necessary for understanding the question reserved." Surely, the question whether the Commonwealth's motion for summary judgment should be allowed is a question of law.

The provisions of G. L. c. 231, § 112, as appearing in St. 1973, c. 1114, § 200, do not restrict the special right of a Justice of this court to report a question of law to the full bench. Section 112 was adopted as part of a comprehensive and cooperative endeavor to coordinate the rules of civil procedure adopted by this court with legislative enactments relating to judicial procedure. St. 1973, c. 1114. Thus, we do not read the provision in § 112 that a single justice may report a case on his own motion without decision "after a finding of facts" as barring him from reporting a question of law pursuant to a rule of this court. Contrast *Doe* v. *Doe, ante* 202 (1979), where neither a statute nor a rule authorized a report from the Superior Court.[6]

---

[5] No objection is made that one of the interlocutory rulings (the order allowing the Commonwealth's motion for partial summary judgment) was made by a single justice other than the one who reported the case. Normally, a report of an interlocutory order may be made only by the Justice who made the interlocutory ruling. G. L. c. 231, § 112. Cf. *John Gilbert Jr. Co.* v. *C.M. Fauci Co.*, 309 Mass. 271 (1941).

[6] Of course, if we conclude, as we do, that the single justice was correct in ruling that there was no genuine issue of material fact, there was "a finding of facts" (G. L. c. 231, § 112) in the sense that, pursuant to the procedures applicable to a motion for summary judgment (Mass. R. Civ. P. 56, 365 Mass. 824 [1974]), there was no properly contested issue of material fact.

Even if there were a procedural defect in the report of this matter, we regard the subject as of sufficient public importance so that, rather than dismiss the report, we would cure the "defect" by transferring

*No genuine issue as to material facts.* We conclude that there is no genuine issue as to any material fact. Certain of the defendants contend that there is a dispute as to whether the Commissioner has approved their revaluation plans, whether their plans are suitable for implementation, and whether the Commissioner has the personnel to implement a program of contracting for the revaluation of their real property. The affidavits submitted by the defendants did not assert the nonexistence of an approved plan. There is no real dispute on the point.

The issues of fact that the defendants say are in contention are not issues of material fact. We can define the scope of the Commissioner's authority on the basis of plainly uncontested facts, and, on those same facts, we can give guidance to the single justice concerning appropriate future action. These uncontested facts are that plans were filed and approved but no funds have been appropriated to implement revaluation.

*The authority of the Commissioner.* The Commissioner has substantial authority and responsibilities as we indicated in *Sudbury* v. *Commissioner of Corps. & Taxation,* 366 Mass. 558 (1974), but the Commissioner has no statutory authority to contract with appraisal firms to value the real estate in the defendant cities and towns at their expense and without their consent. See G. L. c. 58, §§ 7A-7E, for circumstances in which a municipality may request that an assessment system be installed by the Commissioner at the municipality's expense. The Legislature has given local assessors the authority to make contracts for expert appraisal of taxable property. See G. L. c. 40, § 4, twelfth par. We see no basis for implying authority in the Commissioner to enter into such contracts. It is the assessors, not the Commissioner, who must convert whatever reports are received from an appraisal firm, or from their own investigations, into fair cash values and as-

the case here pursuant to our authority under G. L. c. 211, § 4A, to direct any case to be transferred here from a lower court for further action or directions.

sessed valuations. They know the local situation and should be working with an appraisal firm or their own employees to achieve the appropriate result and to obtain an understanding of the process for effective future action.

The assessors must follow the lawful commands of the Commissioner. See *Sudbury* v. *Commissioner of Corps. & Taxation, supra* at 563-564. But the problem in this case exists not because the assessors have flouted the Commissioner's authority, but because each defendant municipality has failed to appropriate the funds necessary to carry out a program of revaluation. We were not concerned in the *Sudbury* case with the question of what should or could be done if a municipality failed to provide necessary funds. On this record, it is uncontested that each remaining defendant municipality has failed to assess its real property in accordance with law and with the directions of the Commissioner, and that, although attempts have been made to secure necessary funds, the appropriate legislative body in each city or town has refused to act favorably on the request. Unlike certain other situations involving State and local relations where the Legislature has required municipal action even in the absence of appropriation (see, e.g., *Amherst-Pelham Regional School Comm.* v. *Department of Educ.*, 376 Mass. 480, 494-495 [1978] [special education services]; *Board of Health of N. Adams* v. *Mayor of N. Adams*, 368 Mass. 554, 564-568 [1975] [fluoridation of a public water supply]; *Commonwealth* v. *Hudson*, 315 Mass. 335, 339-341 [1943] [chlorination of a public water supply]), there exists here no explicit statutory direction to a municipality or its assessors to proceed without a local appropriation. Nor, as we have said, is there any statutory authority for the Commissioner to proceed with a valuation program at the expense of an offending municipality.

*The relief to be granted.* Although there is no express authority, in the absence of an appropriation, for a board of assessors or the Commissioner to incur obligations on

behalf of a municipality, none of the defendants seriously contends that a city or town may effectively thwart its assessors and the Commissioner in their efforts to achieve a result that is required by the constitution and by statute. Certain defendants suggest that, although the Commissioner may not proceed to act on their behalf or at their expense, the local assessors should be able to proceed without local appropriation, on direction from the Commissioner, where the city council or town meeting has failed to respond to requests for funds. We accept this argument only where a court has entered an order authorizing the assessors to proceed accordingly. Indeed, in the absence of a court order authorizing the expenditure of a municipality's revenue, appraisal firms may well be reluctant to enter into and carry out their obligations in contracts with the local assessors. As a general principle, no municipal department may incur a liability in excess of the appropriation made for its use. G. L. c. 44, § 31.

Under the court's general equity power, judgments may be fashioned to assure the completion of necessary revaluations. *Bettigole* v. *Assessors of Springfield*, 343 Mass. 223, 236-237 (1961). Cf. *Commonwealth* v. *Hudson*, *supra*. In particular instances, orders might be fashioned that would permit a city or town, if it wished, promptly to appropriate the funds necessary for a revaluation of its real property. The municipality would thus have the opportunity to determine the source from which appropriations would be met and to have a role in selecting the procedures to be followed in revaluing its real property. Any plan for revaluation must, however, be a reasonable one calling for final results in a timely manner. The Commissioner's views on the adequacy of any program of revaluation and her directions to local assessors will be entitled to great weight in determining what orders should be entered. Municipalities that have not performed their statutory and constitutional duties should not expect a sympathetic judicial reception. See *Assessors of Lynn* v. *Shop-Lease Co.*, 364 Mass. 569, 572 (1974).

If the local assessors and the local appropriating body do not respond promptly and fully, the single justice may conclude that more drastic relief is required, resulting in some loss of local control by the city or town and its officials. Thus, for example, the court might authorize the Commissioner to contract for revaluation services and direct that the cost of the contract be imposed on the city or town, perhaps by directing the State Treasurer to withhold funds otherwise distributable to the municipality (see G. L. c. 58, § 20A; G. L. c. 59, § 20).

We reluctantly reach the conclusion that there must be judicial participation in the process, because we see no reasonable alternative, in the absence of a legislative solution.[7] The single justice shall consider the appropriate order to be entered as to each noncomplying defendant municipality, and may, in particular instances, sever the proceeding as to any municipality and transfer that portion of the case to a special master for further findings or to the Superior Court for further action.

A judgment shall be entered declaring that, in the absence of a court order, (a) the Commissioner of Revenue does not have authority to enter into a contract on behalf of any municipality, without its consent, to obtain a revaluation of its real estate, and (b) the State Treasurer does not have authority to withhold funds to pay the cost of such a contract. The case is remanded to the county court for further proceedings in accordance with this opinion, with the expectation that orders will be entered promptly and, as needed, from time to time, against any defendant municipality that has not undertaken to fund an appropriate program for the revaluation of its real estate as required by law.

*So ordered.*

---

[7] New Hampshire has a statute that provides for the appraisal of real estate in a municipality by the State Commissioner of Revenue Administration but at local expense, where the local authorities have not made a proper assessment or reassessment after an order from the State Board of Taxation to do so. N.H. Rev. Stat. Ann. §§ 71-B:16 to 71-B:18 (Supp. 1977).