Hillsborough
No. 79-100

HERBERT L. BRICKMAN

v.

CITY OF MANCHESTER

December 28, 1979

*Devine, Millimet, Stahl & Branch P.A.*, of Manchester (*William S. Gannon* orally), for the plaintiff.

*Elmer T. Bourque*, of Manchester (*Thomas R. Clark* orally), for the defendant.

DOUGLAS, J.    This case involves a determination whether the master properly selected and applied the capitalization of income method in his evaluation of the plaintiff's property in a tax abatement appeal.

The plaintiff owns the South Willow Shopping Plaza in Manchester. The city tax assessor appraised the property for real estate tax purposes at $1,607,520 for the year beginning April 1, 1976, and assessed a tax of $87,786.31. The plaintiff applied for an abatement and it was denied. Pursuant to RSA 76:17 (Supp. 1978), the plaintiff petitioned the superior court for relief. After a trial, the Master (*Earl J. Dearborn*, Esq.) granted a $19,510.99 abatement. *Souter*, J., entered a decree approving the master's recommendations and reserved and transferred the city's exceptions.

The city's first argument is that the master erred in relying exclusively on the capitalization method in determining the value of the plaintiff's property for real estate tax purposes. This argument is without merit. In abatement petitions, the trial court is empowered to make a determination of the subject property's market value, *Poorvu v. City of Nashua*, 118 N.H. 632, 392 A.2d 138 (1978), and all evidence before the court relating to valuation should be considered. *See Demoulas v. Town of Salem*, 116 N.H. 775, 367 A.2d 588 (1976). However, the court is not foreclosed from choosing a particular method to the exclusion of others. In the present case the master indicates in his report that he considered alternative methods of valuation presented by the parties before settling on capitalization of income. On the evidence presented, we cannot say that the latter method of valuation was not the best available. *See Garland & LaChance Constr. Co. v. City of Keene*, 117 N.H. 920, 379 A.2d 1259 (1977).

The city next argues that the master made two errors in his use of the capitalization method. The first alleged error concerns the determination of gross income. In projecting that figure the master did not assume full capacity; rather he allowed certain deductions for

rental unit vacancies. The city relies on *Demoulas v. Town of Salem*, 116 N.H. 775, 367 A.2d 588 (1976), for the proposition that a deduction for vacancies and uncollected accounts is improper. This reliance is misplaced. In *Demoulas* we said that we did "not mean to suggest that consideration of actual income is improper in all cases." *Id.* at 782, 367 A.2d at 593. Under certain circumstances a master's consideration of vacancies in projecting net income is neither improper nor unreasonable. In the present case there was evidence that the plaintiff's shopping center was designed to serve a neighborhood rather than a larger community or region, that construction of the New Hampshire Mall, a regional center, began shortly after the plaintiff's center was completed, that there were vacancies in plaintiff's center, and that the center was in some ways obsolete. On such evidence the master could and did find that "the Plaintiff's mall [had] a limited economic life and as of the tax year of 1976 such was beginning to appear." We hold that his use of vacancies was proper under the circumstances.

■■ The city also contends that because no uncollectable accounts existed as of the date of valuation, the master erred in allowing a deduction for such amounts. It is unclear from the master's report whether he projected future uncollectable accounts, or future vacancies in excess of those existing at the time of valuation. In either case he was not in error. "Prospective as well as present and past earnings are an important element in investment values, and any immediate prospect of an increase or decrease in earnings should be taken into consideration." *Somers v. City of Meriden*, 119 Conn. 5, 12, 174 A. 184, 187 (1934); *see Uniroyal, Inc. v. Middlebury Bd. of Tax Review*, 174 Conn. 380, 389 A.2d 734 (1978); Annot., *Income or Rental Value as a Factor in Evaluation of Real Property for Purposes of Taxation*, 96 A.L.R.2d 666 (1964). In the present case the evidence supported any implied finding that vacancies would increase or that uncollectable accounts would materialize in the future.

The city's second major argument concerning the capitalization rate is that the master erred in its formulation. We agree.

We have recognized that the capitalization method is "an established and well-accepted method for determining the value of income-producing property." *Berthiaume v. City of Nashua*, 118 N.H. 646, 647, 392 A.2d 143, 144 (1978). The word "value," as used in the context of this case, means the "price which the property will bring in a fair market after reasonable efforts have been made to find a purchaser who will give the highest price for it." *Trustees of the Phillips Exeter Academy v. Exeter*, 92 N.H. 473, 481, 33 A.2d 665, 671

(1943). The capitalization of income method arrives at the fair market value of income-producing property by dividing the net income of the property by a capitalization rate. *Demoulas v. Town of Salem, supra* at 780, 367 A.2d at 592. In the present case, the master defined the capitalization rate as "a fair return on an investment of the type involved [including] variables such as risk involved in the ownership and operation of the property." The master applied to net income a capitalization rate of 19.48 percent. It was composed of three elements: a depreciation deduction of five percent, an allowance for return on investment of nine percent, and a tax factor of 5.48 percent that represented the tax rate for the year ending in 1976 ($54.80 per thousand dollars of assessed valuation). After dividing net income by the capitalization factor of 19.48 percent, the master applied the current equalization rate of 66 percent to arrive at an assessed value for tax purposes. *See Berthiaume v. City of Nashua supra; Hodges v. Kensington*, 102 N.H. 399, 157 A.2d 649 (1960).

The city argues that the master should have used 3.62 percent as the tax factor. This argument rests on the proposition that the 5.48 percent tax rate should have been multiplied by the 66 percent equalization rate before it was included in the capitalization factor. We agree.

■ The city cites *Board of Assessors of Lynn v. Shop Lease Co., Inc.*, 364 Mass. 569, 307 N.E.2d 310 (1974), for the principle that "[t]he purpose of a tax factor, in a formula for capitalizing earnings, is to reflect the tax which will be payable on the assessed valuation produced by the formula." *Id.* at 573, 307 N.E.2d at 313. The court in *Shop Lease* held in essence that if fair market value is scaled down according to some percentage to attain assessed value, the tax factor must be scaled down according to the same percentage. *See also New Brunswick v. New Jersey Division of Tax Appeals*, 39 N.J. 537, 189 A.2d 702 (1963); Santemma, *Review of Real Estate Tax Assessments*, REAL ESTATE LAW JOURNAL, 685, 693 (1973–74). We agree that the tax factor in the capitalization rate should represent, as nearly as possible, the tax rate that the property owner will be paying. In the present case the plaintiff will not be paying 5.48 percent on full valuation; rather he will be paying 5.48 percent on 66 percent of full valuation. His actual payment will obviously be 3.62 percent of full valuation, and we hold that the master should have used 3.62 percent as the tax factor.

The effect of our holding on the plaintiff's abatement is calculated as follows. The city taxed the plaintiff $87,786.31. It used an assessed value of approximately $1,607,520 and applied the 5.48% tax rate. The

master, on sufficient evidence, found net income to be $367,739.13, which, when divided by the incorrect capitalization rate of 19.48%, yielded a market value of $1,887,800. To this figure he then applied the 66% equalization rate and derived an assessed value of $1,245,933. Thus an application of the 5.48% tax rate generated a tax of $68,275.32. The master then subtracted $68,275.32 from the tax actually paid, $87,786.31, and awarded an abatement of $19,510.99.

Had the master taken the $367,739.13 net income figure and used the proper capitalization rate, 17.62%, he would have arrived at a market value of $2,087,552 rather than $1,887,800. The 66% equalization rate applied to $2,087,552 yields an assessed value of $1,377,456.40. The proper tax, then, is $75,484.61. The subtraction of this figure from the actual tax assessed, $87,786.31, yields $12,301.70, and this is the proper abatement award.

*Exceptions overruled in part; sustained in part; remanded.*

KING, J., did not sit; the others concurred.