**FOX RIDGE ASSOCIATES AND COMPANY**

**vs.**

**BOARD OF ASSESSORS OF THE TOWN OF MARSHFIELD**

Nos. 103482-103492, incl.
108292-108301, incl.

Appellate Tax Board
Trial Court of the
Commonwealth of Massachusetts

February 4, 1982

Walter L. Sullivan, Esq., counsel for the appellant.
John F. Ridge, Esq., counsel for the appellee.

## FINDINGS OF FACT AND REPORT

Appellant was the owner of certain parcels of real estate located at Plain Street in Marshfiled on January 1, 1978 and January 1, 1979, the applicable assessment dates, and all taxes were greater than $2,000.00. The following is a chart depicting information utilized by the board to determine jurisdiction:

| Fiscal Year | Application for Abatement | Taxes Paid | Denial | Appeal Filed |
|---|---|---|---|---|
| 1979 | Dec. 22, 1978 | Dec. 22, 1978 | None | Apr. 11, 1979 |
| 1980 | Dec. 13, 1979 | Dec. 13, 1979* | Feb. 6, 1980 | Feb. 29, 1980 |

Since all of the above-enumerated findings occurred on the same date in the various years, the findings are applicable to all individual docket numbers.

With regard to the application for abatement, it is found that they were filed within 30 days of the mailing of the tax bills.

With regard to the second-half tax payments for FY 1979, appellant was granted extensions up to and including May 1, 1980, and for FY 1980 the hearing on the merits was held on April 16, 1980, prior to the due date for the payment. Based upon all of this information, namely the timely payment of taxes and the timely filing of applications for abatement and petitions to this board, jurisdiction is specifically found to hear all appeals.

The parcels include 20.44 acres of land, which is a composite of several irregular lots. It is improved with 23 wood, stucco and brick multi-family dwellings numbered 738-794 Plain Street and four wood and brick multi-family dwellings numbered 678-682 Plain Street. All of the structures contain 12 living units each with a mix of efficiency, one-bedroom and two-bedroom units. There is a total of 324 dwelling units ranging in size from 690 square feet to 900 square feet. There are also supporting facilities as follows: paved roads, parking areas, tennis courts, and a pool and cabana. The improvements were well maintained and the construction was of fair quality. For a more detailed description of the property, see Exhibit 10, pages 12-14, which are adopted by the board as findings of fact.

At the hearing, at which the appellee was not present, appellant introduced an expert who utilized the capitalization of income approach to value. He used the actual income and expense figures for calendar years 1977 and 1978. These are located at pages 21-23 and 25-27 of Exhibit 10. After deducting the expenses, he also allowed a "Reserve for Replacement" totaling $40,450.00 for short-lived items such as refrigerators, stoves, etc.

For FY 1979 the net income figure utilized was $489,207 to which was applied a capitalization rate of .16, comprised of .093 rate of return, .0286 depreciation recapture and .0403 tax factor. Thus, he arrived at a fair cash value figure of $3,000,000.00. For FY 1980 the net income figure utilized was $452,610 to which was applied a capitalization rate of .16, comprised of .093 rate of return, .0286 depreciation recapture and .0382 tax factor. Thus, he arrived at a fair cash value figure of $2,800,000.00

---

*Docket No. 108296, taxes paid Nov. 28, 1979.

Since no evidence was presented by the appellee, the board adopted the gross income figures of the appellant, as follows: FY 1979, $869,061, and FY 1980, $884,386. The board found that the expenses applicable to both years were the following categories provided by the appellant; operating, maintenance and payroll tax and insurance. The board also utilized a 6% of gross income as management fee. This was higher than used by the appellant because the board deemed that the expenses of administration and renting used by the appellant were to be included in the management fee. The board also did not allow a "reserve for replacement" of short-lived items, deeming that such deductions were reflected in the capitalization rate.

With regard to disproportionate assessment, the board adopted the equalization studies of the Department of Revenue, which was not challenged by the appellee. The board applied a ratio of 42% for FY 1979 and an effective tax rate of $39.00 for FY 1980 in accordance with the said studies.

Based on all of the evidence, testimony, exhibits and examination and analysis of the appraisal report and the foregoing general and subsidiary findings, the board found the following fair cash values:

FY 1979 - $4,682,900
FY 1980 - $4,574,000

Abatements were granted in accordance with the decision, a copy of which is attached.

## OPINION

Two issues are raised by these appeals: overvaluation and disproportionate assessment.

As to overvaluation, the standard to be used in determining "fair cash value" is well known and without dispute. It is the price at which a willing seller, not under compulsion to sell, will sell and a willing buyer, not under compulsion to buy, will buy the property in question, each party having full knowledge of all relevant facts. **Boston Gas Company v. Assessors of Boston,** 334 Mass. 549 (1950).

The decision of the board, although required to be based upon evidence presented, need not coincide with the valuation given by any witness. The market value of any real estate cannot be determined with mathematical certainty, but must ultimately rest in the realm of opinion, estimate and judgment. **Assessment of Quincy v. Boston Consolidated Gas Company,** 309 Mass. 60 (1941). The board is not required to specify the exact manner in which it arrives at its fair cash value figures. **Jordan Marsh Company v. Assessors of Malden,** 359 Mass. 106 (1971).

The board used an effective tax factor in its capitalization rate in arriving at the fair market value of the subject property. The purpose of a tax factor in a formula for capitalizing earnings is to reflect the tax which will be payable on the assessed valuation produced by the formula; where the fair cash value determined by the capitalization of earnings is to be reduced in arriving at the assessed valuation, the tax factor must be proportionately reduced. See, **Assessors of Lynn v. Shop Lease Company, Inc.,** 364 Mass. 569, 573 (1974).

As to disproportionate assessment for the fiscal year 1979, a taxpayer has a right to have his assessment reduced so that it is "proportional to the assessments of the class of property valued at the lowest percentage of fair cash value." **Assessors of Weymouth v. Thomas E. Curtis and Others Trustees,** 1978 Adv. Sh. 1676, 1684, quoting **Shoppers World, Inc. v. Assessors of Framingham,** 348 Mass. 366, 377 N.E.2d 10 (1965); **Tregor v. Assessors of Boston,** 1979 Adv. Sh. 770.

The board can utilize the equalization studies prepared by the Commissioner in arriving at a figure for the ratio of disproportionate assessment. See, G.L.c. 58A, § 12C; **Tregor, supra** at 779; and **Kenniston v. Assessors of Boston,** 1980 Adv. Sh. 1485 at 1498.

For years beginning in 1980, see, G.L.c. 58A, § 14; St. 1979, c. 797, §§ 10 and 14; **Kenniston, supra;** and Mass. Constitution, Art. 112.

These principles were applied by the board in determining the fair cash value for the appellant's real estate in these appeals.

Our decision was promulgated October 22, 1980.

APPELLATE TAX BOARD

By John P. Mulvihill, Chairman.

A True Copy

Attest: Richard B. Willis

Clerk of the Board

| Docket Number | Location | Assessed Valuation | Tax Assessed | Fair Cash Value | % of Fair Cash Value | Abatement |
|---|---|---|---|---|---|---|
| 03482 | 786 Plain St. | $171,345 | $16,449.12 | $318,864 | $133,923 | $3,592.51 |
| 03483 | 156 Tilden St. | 26,050 | 2,500.80 | 48,478 | 20,360 | 546.24 |
| 03484 | 794 Plain St. | 342,445 | 32,874.72 | 637,274 | 267,655 | 7,179.84 |
| 03485 | 792 Plain St. | 382,995 | 36,767.52 | 712,733 | 299,348 | 8,030.11 |
| 03486 | 756 Plain St. | 211,280 | 20,282.88 | 393,182 | 165,136 | 4,429.82 |
| 03487 | 742 Plain St. | 230,185 | 22,097.76 | 428,361 | 179,912 | 4,826.20 |
| 03488 | 738 Plain St. | 147,250 | 14,136.00 | 274,025 | 115,090 | 3,087.36 |
| 03489 | 782 Plain St. | 171,180 | 16,433.28 | 318,557 | 133,794 | 3,589.05 |
| 03490 | 748 Plain St. | 207,705 | 19,939.68 | 386,528 | 162,342 | 4,354.84 |
| 03491 | Plain St. | 198,880 | 19,092.48 | 370,106 | 155,444 | 4,169.85 |
| 03492 | 682 Plain St. | 145,980 | 14,014.08 | 271,661 | 114,097 | 3,060.76 |

## DECISION

Decision for the appellant; abatements granted in the respective amounts according to the schedule set forth below.

The Board finds the fair cash value of appellant's properties to be as set forth below. In accordance with agreement of the parties, the Board further finds that the appellant's properties should be assessed at 42% of fair cash value.

APPELLANT TAX BOARD

| Docket Number | Location | Assessed Valuation | Fair Cash Value | Equalized Tax Rate | Tax Assessed | Taxes Due | Abatement |
|---|---|---|---|---|---|---|---|
| 08292 | 738 Plain | $169,960 | $348,270 | .39 | $15,466.36 | $13,582.56 | $1,883.80 |
| 08293 | 742 Plain | 230,185 | 471,679 | " | 20,946.84 | 18,395.51 | 2,551.33 |
| 08294 | 794 Plain | 342,445 | 701,715 | " | 31,162.50 | 27,366.91 | 3,795.59 |
| 08295 | 792 Plain | 382,995 | 784,808 | " | 34,852.55 | 30,607.51 | 4,245.04 |
| 08296 | 682 Plain | 145,920 | 299,009 | " | 13,278.72 | 11,661.37 | 1,617.35 |
| 08297 | 786 Plain | 171,345 | 351,109 | " | 15,592.40 | 13,693.25 | 1,899.15 |
| 08298 | 782 Plain | 171,180 | 350,770 | " | 15,577.38 | 13,680.73 | 1,897.30 |
| 08299 | Plain St. | 198,880 | 407,531 | " | 18,098.08 | 15,893.73 | 2,204.35 |
| 08300 | 748 Plain | 207,705 | 425,615 | " | 18,901.16 | 16,598.99 | 2,302.17 |
| 08301 | 756 Plain | 211,280 | 432,941 | " | 19,226.48 | 16,884.70 | 2,341.78 |

## DECISION

Decision for the appellant' abatements granted in the amounts stated in and based ont he schedule set forth below, all pursuant to applicable law in general and to G.L.c. 58A, § 14 in particular.

APPELLATE TAX BOARD