BOARD OF ASSESSORS OF NEW BRAINTREE' *vs.* PIONEER VALLEY ACADEMY, INC.
(and a companion case).

Suffolk. March 7, 1969. — April 9, 1969.

Present: WILKINS, C.J., SPALDING, WHITTEMORE, CUTTER, & KIRK, JJ.

*Taxation*, Real estate tax: exemption, school, abatement; Appellate Tax Board: appeal to board, jurisdiction.

In connection with an academy organized in 1965 under G. L. c. 180 to provide secondary education for boys and girls under the direction and discipline of the Seventh-day Adventist Church, rent-free faculty houses which were built near a dormitory as "a strong incentive for attracting well-qualified teachers" and in which teachers were "required to live," were actively appropriated "to the immediate uses of" the educational purposes for which the academy was organized, were occupied in a manner which contributed "immediately" to the accomplishment of such purposes, and were exempt from taxation in 1966 under c. 59, § 5, Third [615]; also exempt thereunder was a rent-free apartment on the academy's premises occupied by a teacher in an

elementary school for children of the academy's faculty run by a Conference of the church which heavily subsidized the academy and paid that teacher's salary [615–616].

A taxpayer's payment of an amount in excess of the whole tax on a parcel of real estate in a town at the tax rate in force there in 1966 "upon a valuation equal to the average of the valuations of . . . [that] parcel . . . for the three years next preceding" 1966 satisfied the payment requirements of G. L. c. 59, §§ 64, 65, for an appeal to the Appellate Tax Board, and resort to the procedure for an appeal under § 65B was unnecessary. [616–617]

Where, on appeal from a decision of the Appellate Tax Board in favor of the assessors of a town grounded on want of jurisdiction of the board of an appeal to it under G. L. c. 59, §§ 64, 65, from the assessors' denial in 1967 of an application for abatement of real estate taxes filed on October 20 following distribution of the 1967 town tax bills sometime after September 1, the record did not show the precise date on which the tax bills were sent out, this court reversed the board's decision and remanded the case to it to reopen the hearing and to make an explicit finding concerning the date on which the tax bills were mailed, and, if they were mailed on or after September 20, to decide the case on its merits, but, if they were mailed before September 20, to reaffirm its decision for the assessors. [619]

APPEALS from decisions of the Appellate Tax Board.

*Francis J. Cranston,* Town Counsel, for the Board of Assessors of New Braintree.

*Morton C. Jaquith* (*Melvin R. Perlman* with him) for Pioneer Valley Academy, Inc.

CUTTER, J. These are appeals from decisions of the Appellate Tax Board with respect to the exemption of Pioneer Valley Academy, Inc. (Pioneer) from real estate taxes assessed as of January 1, in the years 1966 and 1967, upon part of Pioneer's land in New Braintree. The town concedes that 386 of 624 acres owned by Pioneer on January 1, 1966, are exempt and that the same land was exempt in 1967. It taxed the remainder of Pioneer's land. By January 1, 1967, Pioneer had acquired three new parcels (118 acres in all). The town, in addition to the land taxed in 1966, taxed these 118 acres and also one house, valued at $18,000, as to which an abatement (as a parsonage) had been granted in 1966. An application for abatement was made in each year. The assessors denied each application (except for the 1966 abatement on the parsonage).

A petition was filed with the Appellate Tax Board for each year. The board, in the 1966 case, rendered a decision for Pioneer and granted exemption and abatements with respect to all the real estate taxed in 1966. In the 1967 case the board decided for the town on the ground that the board lacked jurisdiction. In the 1966 case the board was not asked by either party to file, and did not file, any findings of fact and report as provided in G. L. c. 58A, § 13, as amended through St. 1968, c. 120, §§ 2–4.[1] In the 1967 case, the board at Pioneer's request filed findings and a report. The town has appealed to this court in the 1966 case. Pioneer has appealed in the 1967 case.

1. Pioneer is a nonprofit corporation formed in 1965 under G. L. c. 180 to conduct a nonprofit school for boys and girls under the direction and discipline of the Seventh-day Adventist Church. Officers of the Southern New England Conference Association (the Conference) of that church or of a college conducted by members of that faith were the incorporators and became trustees. Pioneer's academy was built on land purchased by the Conference and conveyed by it to Pioneer. Part of this land, which the town concedes to be exempt from taxation, contained dormitories, a cafeteria, and power and water utilities for the school. Ten lots (lots 2 to 11), which the town did tax, included land on which stood faculty houses, land which contained the institution's water supply, land purchased for the protection of

---

[1] It has seemed more expeditious in this case to determine (unaided by board findings) whether the board's decision in the 1966 case was supported by substantial evidence, than to remand the case to the board to make subsidiary findings. See *Leen* v. *Assessors of Boston*, 345 Mass. 494, 501–502. At the time of the *Leen* decision, appeals from decisions of the Appellate Tax Board were subject to G. L. c. 30A. By virtue of St. 1968, c. 120, this was no longer the case when these cases were decided on August 1, 1968, but the board, wholly apart from c. 30A, still remains subject to general principles affecting administrative decisions and judicial review of them. Even if the parties do not request findings and a report (see *Ultronic Systems Corp.* v. *Assessors of Boston, ante*, 284, 287; the board, in a case apparently to be appealed, in order to clarify and substantiate its decision and to enable this court properly and justly to decide the issues of law presented to it (see *Watkins* v. *Simplex Time Recorder Co.* 316 Mass. 217, 224–225), should find those subsidiary facts upon which it relies and certainly those subsidiary facts which it regards as supporting its conclusions. See *Herson's Case*, 341 Mass. 402, 406–408.

an auxiliary water supply, and two tracts of improved farm land.

The town, on the merits, makes its principal attack on the claim of exemption for the rent-free faculty houses which by photographs in evidence are shown to be eighteen attractive, but not elaborate, small houses of good construction, each on a substantial lot of land and with an attached garage. The town's attitude (as expressed in its denial of exemption for 1966) is that while Pioneer's "purposes are admirable and . . . [its] school of the highest calibre the fact that . . . [it] require[s] a faculty of such a large number to live in the campus to handle the number of students . . . is unreasonable" and that an exemption in the amount claimed is "a hardship to the town financially." [2]

A 1967 catalog of Pioneer in evidence shows that the school offers college preparatory and general courses. Each student, as a part of an educational policy of "training . . . students along work lines," is required to earn part of his expenses and is credited on his school account a specified amount for each hour of labor in the laundry, cafeteria, or dormitories, in maintenance or janitorial service, on the school farm, or in a furniture mill owned by the General Conference of Seventh-day Adventists.

Because Pioneer is a "religious . . . character-building school" there is emphasis on a "close relationship . . . between teacher and students" and operations are on a "school family plan, where the faculty takes part in social and recreational activities with the students" in addition to supervisory and teaching work. Supervision goes on also after supper and on weekends. Meetings for all teachers and administrative employees are held in the evenings. "All day-to-day employment and operations of . . . [Pi-

---

[2] Although Pioneer's right to exemption under G. L. c. 59, § 5, Third, would not be affected by hardship to the town, the evidence reveals that Pioneer provides most, if not all, of its own roads, drainage, fire protection, school instruction, and other municipal services. Pioneer asserts that the town receives benefits from motor vehicle excises on faculty motor vehicles, State aid for children of faculty members taught at Pioneer's own elementary and secondary schools, and some increase in State tax distributions because of Pioneer's property in the town.

oneer] are conducted by . . . people who live . . . on the campus." Members of the faculty are called in the evening to meet emergencies.

Pioneer considers "every person employed by . . . [it] a faculty member." Each "teacher in the classroom . . . is charged with . . . training . . . the head . . . . Other individuals sometimes assist them, [and] the students with their lessons but they are particularly involved with . . . training . . . the working abilities of the students and all of them . . . [assist] with the religious education, directly or indirectly." At the time of the hearing before the board there were 223 students in the school with the equivalent of about fifteen full-time teachers, not including those in an elementary school [3] run by the Conference for fifteen faculty children.

The faculty houses, located about 1,000–1,500 feet from the boys' dormitory, were built as "a strong incentive for attracting well-qualified teachers." Teachers "are required to live in the [school] housing." Administrative personnel also live on the school premises. This is convenient and promotes a close relationship between faculty and students.

The town relies largely on *President & Trustees of Williams College* v. *Assessors of Williamstown*, 167 Mass. 505, 509, in which it was held that houses owned by Williams College and rented to professors were not occupied by the college for college purposes. This court said that "the occupants were each in the sole occupation of the premises . . . for strictly private purposes" with control in them, not the college. The case, however, was treated as "plainly distinguishable" in *South Lancaster Academy* v. *Lancaster*, 242 Mass. 553, 556–560, which also involved a Seventh-day Adventist educational institution at which the students were

---

[3] This is on Pioneer's premises but is not supervised by its principal, nor is it directly part of Pioneer's main educational objective which is in the field of secondary education. Teachers in the elementary school are paid by the Conference and are selected by the Conference and the local church. One young, unmarried woman is employed by the Conference to teach in the elementary school. She occupies an apartment or house rent free on Pioneer's premises.

required to work. A cottage was occupied in part by the principal as his office and dwelling, rent free, except for a deduction from the principal's salary which "did not more than pay for heating and lighting." This cottage was held to be exempt from taxation, because "it could . . . have been found that the occupation . . . was essential to the orderly and efficient management of the school." In the present case, the faculty housing project was more elaborate. Nevertheless, the Appellate Tax Board reasonably could find that the faculty housing was essential to the success of a well planned scheme of secondary education in which the talents of all Pioneer's teachers and administrative workers were being employed together in the comprehensive education of the students.

The assistance to the promotion of Pioneer's purposes is "direct and immediate" and not merely "consequential." *Emerson* v. *Trustees of Milton Academy,* 185 Mass. 414, 415. See *Trustees of Phillips Academy* v. *Andover,* 175 Mass. 118, 123–126, where the *Williamstown* case was said to stand "on its own facts." See *President & Fellows of Harvard College* v. *Assessors of Cambridge,* 175 Mass. 145, 148–149. Thus the *Williamstown* case, the authority of which is much narrowed by the decisions just cited, does not preclude exemption on the facts before us. See *Assessors of Boston* v. *Garland Sch. of Home Making,* 296 Mass. 378, 391. The board could conclude that the housing project was actively appropriated "to the immediate uses of" the educational purposes for which Pioneer was organized and was occupied in a manner which contributed "immediately" to the accomplishment of those purposes. See *Babcock* v. *Leopold Morse Home for Infirm Hebrews & Orphanage,* 225 Mass. 418, 421–422. Two of the requests for rulings sought by the town were properly denied, for they did not adequately reflect the principles stated in the cases just cited.

The town contends that the apartment, used (see fn. 3, *supra*) by the unmarried elementary school teacher, who is paid by the Conference, is not occupied by Pioneer for its own educational purposes. The evidence shows that Pioneer

(see fn. 4, *infra*) has been and is heavily subsidized by the Conference (both by capital gifts and with donations to meet large operating deficits) in aid of education of a type in which the Conference has a strong interest. In affording the teacher a dwelling, however, Pioneer not only achieves an educational end desired by the Conference but also serves directly its own purposes, for it obtains the services of an elementary school teacher for children of faculty members. Unlike the situation discussed in *Worcester Masonic Charity & Educ. Assn.* v. *Assessors of Worcester*, 326 Mass. 409, 411–412, the teacher's occupation of the apartment may be viewed as carried on by her primarily for the purposes of Pioneer, the owner, and only indirectly for the purposes of her employer, the Conference.

The town somewhat vaguely argues that Pioneer carries out its educational purposes in too elaborate fashion. Even assuming this argument to have any significant basis, we think that Pioneer cannot be said to have acted in this respect beyond the range of sound educational discretion. Any decision about how liberal a provision should be made for Pioneer's educational venture, and about the form which that provision should take, must be made by Pioneer's trustees acting in good faith. The courts should not undertake to interfere with their reasonable determination. See *Emerson* v. *Trustees of Milton Academy*, 185 Mass. 414, 417–418; *Trustees of Thayer Academy* v. *Assessors of Braintree*, 232 Mass. 402, 409; *Assessors of Dover* v. *Dominican Fathers Province of St. Joseph*, 334 Mass. 530, 540–541.

We hold that the decision of the board on the merits of the 1966 exemption was supported by substantial evidence. Our examination of the evidence concerning Pioneer's 1967 activities in this area suggests no occasion for any different conclusions on the merits in that year, although it is now premature for us to consider the status of the 118 acres acquired by Pioneer in 1966.

2. In both the 1966 case and the 1967 case the town contends that Pioneer failed to make such payments of the taxes assessed to it as are statutory conditions precedent to

claiming an appeal to the Appellate Tax Board. With respect to each of the parcels, except parcel 3, upon which a tax was assessed by the town in 1966 and in 1967, Pioneer paid the tax on such parcel in full. This the town admits. The town also appears to admit Pioneer's allegations in par. 4 of the petition for each year. These paragraphs alleged that Pioneer paid in each year, with respect to the tax on parcel 3, an amount (on the 1966 tax, the sum of $88.80 plus interest) in excess of the *whole* tax at the tax rate in force for such year "upon a valuation equal to the average of the valuations of . . . parcel [three] . . . for the three years next preceding . . . [the] year" in which the tax was imposed. This satisfied the payment requirements (as a condition of appeal) of G. L. c. 59, § 64 (as amended through St. 1965, c. 597, § 2), and of § 65 (as amended through St. 1945, c. 621, § 6). There thus was no need for Pioneer to satisfy the requirements of § 65B (as amended through St. 1945, c. 621, § 7), which would have been applicable if Pioneer had paid only "a sum not less than *one half* of the amount which would be assessable in the year of assessment upon a valuation equal to the average of the valuations of . . . parcel [three] . . . for the three years next preceding said year" (emphasis supplied). The board correctly ruled in the 1966 case that Pioneer's appeal was not under § 65B. Its 1967 decision on the town's motion to dismiss could properly have been based on the same ground. See Pike & Cohen, Annotations (1962) to Nichols, Taxation in Massachusetts (3d ed.) 49–52.

There thus is no occasion to consider (either in 1966 or 1967) whether Pioneer was financially able to pay the balance of the tax upon parcel 3 before taking its appeal.[4]

3. The town has not argued in its brief various exceptions to rulings on evidence sufficiently to require us to discuss them. See *Lolos* v. *Berlin*, 338 Mass. 10, 13–14; *Moskow* v.

---

[4] As to its inability to do so, Pioneer relied on substantial evidence that it had at all times operated at a serious annual deficit, and that it was able to make capital improvements and to meet its operating expenses only with the aid of the Conference's capital gifts and annual operating subsidies. These were paid by the Conference from funds raised from the tithes of church members.

*Boston Redevelopment Authy.* 349 Mass. 553, 568, cert. den. 382 U. S. 983.

### THE 1967 CASE.

4. Pioneer alleged that on October 20, 1967, it applied for an abatement of the taxes on the portion of its real estate taxed by the town in 1967. General Laws c. 59, § 59 (as amended through St. 1963, c. 125, and St. 1965, c. 615, § 2), permits an application for abatement to be filed "on or before October first of the year to which the tax relates or, if the tax is other than a poll tax and the bill or notice was first sent after September first of such year, on or before the thirtieth day after the date on which the bill or notice was so sent." The application was timely if the town tax bills were not sent out prior to September 20, 1967. At the arguments, counsel for the town conceded that the 1967 tax bills had been distributed at some time after September 1, 1967, but did not state the precise date. Pioneer admits, and the board in its findings and report on the 1967 case asserts, that Pioneer was advised, while the 1967 case was pending before the board, that the record (probably Pioneer's allegation in its petition concerning filing on October 20, 1967, the application for abatement of the 1967 tax) revealed an "apparent jurisdictional defect." Pioneer says that this advice was given by the board "after the close of the evidence."

We assume that Pioneer had the burden of proving (see *Assessors of Boston* v. *Suffolk Law Sch.* 295 Mass. 489, 496; cf. *Singer Sewing Mach. Co.* v. *Assessors of Boston,* 341 Mass. 513, 517–520), at least if the issue was raised before the board, that it had seasonably filed its application for abatement on or prior to October 1, 1967, or the thirtieth day after the tax bills had been sent out by the town, whichever was the later. The issue was raised, at best obscurely, by the town's answer to par. 1 of Pioneer's 1967 petition (and not in the town's answer to par. 5 of the petition in which Pioneer alleged the filing of its application for abatement) by an averment that Pioneer "failed to follow proper statu-

tory procedure for obtaining an exemption . . . to obtain an abatement." In the somewhat confused state of the pleadings, we doubt that it was apparent on the face of the record that the board lacked jurisdiction because of late filing of the application for abatement. Indeed the record does not show when the tax bills were sent out, and there is in the record no affidavit by the town tax collector concerning the "time of sending" out the bills. See G. L. c. 60, § 3 (as amended through St. 1963, c. 160, § 25). The record also does not show that the board gave Pioneer opportunity at a reopened hearing before the board to produce the testimony of the tax collector, or other evidence concerning the date of mailing the 1967 bills.

In any event, Pioneer should not be deprived (by confused pleadings and consequent failure of proof on an issue, probably susceptible of simple proof, not clearly presented by the pleadings) of a 1967 exemption to which it would be entitled if the board should reach the same conclusion as to 1967 upon the same evidence which led it to hold Pioneer exempt in 1966.[5] Accordingly, we remand the 1967 case to the board to reopen the hearing and to make an explicit finding concerning the date when the 1967 tax bills were mailed. If that date was on or after September 20, 1967, the board should then proceed to a decision on the merits of the 1967 case; and if the 1967 tax bills in fact were sent out before September 20, 1967, the board is to reaffirm its decision for the town (subject to such further judicial review, in each instance, as the parties may seek).

5. In the 1966 case, the board's decision is affirmed. Pioneer is to have costs of appeal.

6. The decision of the board in the 1967 case is reversed and the case is remanded to the board for further proceedings consistent with this opinion.

*So ordered.*

---

[5] In view of our disposition of the 1967 case, we do not consider Pioneer's contention that the board's decision on the exemption for 1966 is res judicata as to the exemption for 1967. The tax of 1967 is separate from that of 1966. Of course, as a practical matter, in the absence of a material change in circumstances during 1966, the board doubtless should and will reach the same conclusion on the same evidence.