BOARD OF ASSESSORS OF LYNNFIELD *vs.* NEW ENGLAND OYSTER HOUSE, INC.

Suffolk.   November 8, 1972. — December 8, 1972.

Present: TAURO, C.J., REARDON, HENNESSEY, KAPLAN, & WILKINS, JJ.

*Value.   Taxation,* Appellate tax board: appeal to Supreme Judicial Court, findings. *Evidence,* Of value.

There was no merit in a contention that an appeal to this court from the Appellate Tax Board should be dismissed for failure of the appellant to set forth in the claim of appeal the "precise references" to the proceedings before the board required by G. L. c. 58A, § 13, where such references were impossible with respect to

362 Mass. 696                                                    697

Board of Assessors of Lynnfield *v.* New England Oyster House, Inc.

alleged errors of omission on the part of the board and adequate references were made with respect to an alleged error of the board in giving weight to a certain fact. [699]

A certain decision by the Appellate Tax Board fixing the value for local taxation of restaurant property on a main highway, with great weight given to the "capitalization of income method," at a figure between those adopted by the experts of the assessors and the taxpayer adequately set forth reasons and supporting subsidiary findings and was supported by substantial evidence. [699–702]

In determining the value for local taxation of restaurant property on a main highway, there was no abuse of discretion on the part of the Appellate Tax Board in considering, under G. L. c. 58A, § 12B, the assessed value of another, comparable, restaurant property nearby on the same highway. [702–703]

APPEAL from a decision by the Appellate Tax Board.

*S. Peter Gorshel,* Town Counsel, for the Board of Assessors of Lynnfield.

*Francis C. McGrath* for the taxpayer.

WILKINS, J.   The board of assessors of Lynnfield appeals from the decision of the Appellate Tax Board (the board) granting abatements of 1969 and 1970 real estate taxes to the New England Oyster House, Inc. (New England).

New England operates a restaurant in Lynnfield on the northbound side of Route 1, a main divided highway often called the Newburyport Turnpike.   The restaurant is situated on approximately three and one-half acres, of which about two acres have been improved by grading, installation of a paved parking area and other landscaping.   The building, constructed in 1968, is a one story frame structure containing 6,270 square feet.   On the opposite side of Route 1 and somewhat southerly of New England's property, a restaurant called The Ship is located in a building having an area of 6,119 square feet and on a lot of approximately three acres.   The board took a view of the general location of New England's property and of The Ship and of the land and building of each.

In 1969 and 1970 the assessors valued the property of New England at $373,590.   At the hearing there was conflicting expert testimony, largely concerned with the

"capitalization of net earnings" method of valuation. The board concluded that the fair cash value of the premises on January 1, 1969, and January 1, 1970, was $250,000.

The board found that there was no evidence of the sale price of any comparable property, although there was evidence of the sale prices of vacant land in the vicinity. It had before it evidence that the cost of the building and site preparation was $263,778 (exclusive of a ten per cent architect's fee) and that the cost of the land to New England in 1967 was $50,000. An attempt by New England to establish a value of less than $171,000 by evidence of replacement cost less depreciation was rejected on the ground that New England's proffered expert on reconstruction cost had "very limited experience in commercial construction in Massachusetts and lack of professional training as a construction or architectural engineer."

In an analysis of the expert testimony on the "capitalization of net income" method of valuation, the board accepted and rejected certain aspects of the opinions expressed by each party's expert. New England's expert arrived at a value of $155,000, the assessors' expert at a value of $387,000. Although there were differences in certain details (such as the amount of the allowance for the expense of repairs and the treatment of real estate taxes as an expense item), the divergent views of the experts were largely attributable to their varying judgments concerning the fair rental value of the property and the capitalization rate for a return on investment and depreciation.[1] The board expressly rejected the fair rental value used by the assessors' expert because his opinion of the rental value of the property was derived at least in part from the opinions of various owners and lessees of restaurants, only two of which were located in the general vicinity of the assessed premises. It is

---

[1] New England's expert adopted a capitalization rate of approximately six times earnings; the assessors' expert used a rate of approximately nine times earnings.

clear, as the assessors contend, that the board did not explicitly set forth any determination by it of the fair rental value of the property or any specific rate of capitalization which it may have adopted in reaching its conclusion as to the fair cash value of the property.

New England contends initially that the appeal should be dismissed because the assessors failed to set out in the claim of appeal, as required by G. L. c. 58A, § 13, each error of law "with precise references to the portions and particulars of the proceedings before the board in which it is alleged that error of law occurred." The claim of appeal listed as errors of law the assertions that (1) "the decision is unsupported by substantial evidence," (2) "the findings of fact and report . . . [do] not set forth adequate reasons for . . . [the board's] decision," and (3) "the report does not make adequate subsidiary findings as required by . . . [G. L. c. 58A, § 13]." A reference to any portion of the proceedings before the board in connection with any of these alleged errors would be impossible because each alleged error involves an asserted omission on the part of the board and not affirmative action apparent on the record. Quite specific claims that the board erred in giving weight in its decision to the assessment of The Ship (involving an appropriate reference to the transcript in one instance) were sufficient to meet the statutory requirement that reference be given to the portion of the proceedings in which error is alleged to have occurred.

The assessors assert that (1) the board's decision lacked adequate supporting reasons and contained insufficient supporting subsidiary findings, (2) the board improperly considered only the capitalization of income method of valuation, (3) the board's decision was not supported by substantial evidence, and (4) the board placed improper reliance upon the assessed value of The Ship because there was no evidence that it was comparable to the property of New England.

1. The decision of the board adequately sets forth reasons for its decision and contains subsidiary findings

which adequately support its conclusion. The board must, of course, find supporting subsidiary facts and must set forth reasons for its conclusion. See *Assessors of New Braintree* v. *Pioneer Valley Academy, Inc.* 355 Mass. 610, 612, fn. 1. The board analyzed and evaluated the testimony and stated in numerous instances those items of evidence which it accepted and those which it rejected.[2] However, the board was not required to specify the exact manner in which it determined that the fair cash value of the property was $250,000. *Jordan Marsh Co.* v. *Assessors of Malden*, 359 Mass. 106, 110.

For this reason, the board was not required to indicate the capitalization of earnings rate which it in fact used. The board did not accept the actual computations of any witness and was not obliged to do so. *Assessors of Quincy* v. *Boston Consol. Gas Co.* 309 Mass. 60, 72. Clearly the quality of the board's decision could have been improved by more specific findings on the various elements which it accepted in arriving at its conclusion. However, in a case such as this, where the record is not long and where the principal issue at the hearing consisted of disagreement between experts on various elements or factors to be used in the "capitalization of net income" method of arriving at fair cash value, the reasoning and the findings of fact set forth in the decision of the board were adequate. The fact that the board rejected as too high the repair and maintenance allowance selected by the assessors' expert (thus, standing alone, tending to increase the net income and hence the capitalized value of the property) is not, when considered with

---

[2] For example, the board pointed out that the preferable method of handling local real estate taxes in the "capitalization of net income" method of valuation involves the use of a factor, rather than the use of the actual tax payment made. In his "capitalization of net income" analysis New England's expert inappropriately used the taxes actually assessed. The expense of local taxation turns on the very point in dispute, the fair cash value of the property. Logically, therefore, income should be capitalized before taxes "with the capitalization rate increased to yield the return the investor expects plus the amount of local taxes payable." *New Brunswick* v. *New Jersey Div. of Tax Appeals*, 39 N. J. 537, 546.

all the evidence, inconsistent with the general finding of value reached by the board.

2. The assessors next object that the board wrongly based its decision solely on the "capitalization of net earnings" method and totally disregarded any other method of valuation. It is clear from the board's decision that it placed "great weight to the capitalization of income method" of valuation but that it did not rely on that method exclusively. The board understandably did not use the sale price of any comparable property because there was no evidence of any such sale, although there was evidence of sales of unimproved land upon which the board did rely to some unspecified degree in rejecting the assessors' valuation. The board also had evidence of the assessed valuation of The Ship, which it found was a comparable property and upon which (as discussed below) it could and did rely. G. L. c. 58A, § 12B. The board rightly paid little attention to a determination of value based on the replacement cost of the building and improvements less depreciation. Certainly it properly rejected New England's attempt to use this method of valuation where New England's witness was unqualified to testify as to construction costs in the Lynnfield area. The assessors urge, however, that the actual costs of land, improvements and building, recently incurred by New England, should have been considered by the board in greater detail and should have been relied upon by the board. Both experts, however, focused their attention on the "capitalization of net earnings" approach to value, and indeed the assessors' expert made no mention of the "replacement cost less depreciation" method of valuation either in his appraisal or in his testimony. Moreover, there was no evidence that the actual amounts paid for land, improvements and building represented the fair and reasonable cost of those items. There was evidence that the building was owner-occupied, a fact which the board believed on the evidence may have somewhat inflated construction costs because of the inclusion of certain costs normally borne by a lessee. In

these circumstances, it was not error for the board to have given "great weight to the capitalization of income method" in arriving at its determination of value. In reaching its conclusion "[t]he board was not required to believe the testimony of any particular witness but it could accept such portions of the evidence as appeared to have the more convincing weight." *Assessors of Quincy* v. *Boston Consol. Gas Co.* 309 Mass. 60, 72.

3. The decision of the board was supported by substantial evidence. In argument on this point, the assessors seem to be objecting more to the board's treatment of certain evidence than to the lack of substantial evidence in the record.

There is no merit to the assessors' objection that the board gave more weight than it should have to testimony of New England's expert concerning comparable rentals in the area. The weight to give to the testimony of a witness, after the disclosure by cross-examination of possible but not fatal weaknesses in that testimony, is clearly for the trier of fact, in this case the board.

The statement of the assessors' principal witness that "a lessee might consider that he was paying about 20¢ per square foot annually for the 152,460 square feet of land and about $6 per square foot for the building" (or approximately $68,700 annually) was not misinterpreted by the board in a harmful way. The assessors claim that the board improperly concluded that the assessors' witness overvalued the land. If expenses recognized in the "capitalization of net income" approach were to be allocated between land and building, very possibly the board was correct in concluding that the assessors' expert attributed approximately fifty per cent of his value of the property to the land. In any event, the assessors can hardly expect to prevail before this court on the basis of a possible misinterpretation by the board of a confusing statement appearing in the evidence presented by the assessors' own expert witness.

4. Finally, the assessors object to the introduction of evidence of the assessed valuation of The Ship. Under

G. L. c. 58A, § 12B, "[a]t any hearing relative to the assessed valuation of property, evidence as to the valuation at which assessors have assessed other property of a comparable nature shall be admissible." The assessors assert that the admission of evidence of the assessed value of The Ship was an abuse of discretion because there was no evidence of the comparability of New England's property and The Ship. The record discloses that each property is a restaurant of approximately the same floor area on lots of approximately the same size, situated near each other on the same State highway. Moreover, the board took a view of both premises and of the general vicinity. The admissibility under G. L. c. 58A, § 12B, of evidence of assessments imposed on other property claimed to be comparable in nature to the subject property is largely a matter within the discretion of the board. *Leen* v. *Assessors of Boston,* 345 Mass. 494, 506. There was no abuse of that discretion here. It was further within the board's discretion to receive evidence of the assessed valuation of The Ship before taking a view and before some, or even all, of the evidence concerning the comparability of The Ship was received.

The decision of the Appellate Tax Board is affirmed. New England is to have costs of appeal.

*So ordered.*