BOARD OF ASSESSORS OF BOSTON *vs.* OGDEN SUFFOLK DOWNS, INC.

Suffolk. September 8, 1986. — November 24, 1986.

Present: HENNESSEY, C.J., WILKINS, NOLAN, LYNCH, & O'CONNOR, JJ.

*Taxation,* Real estate tax: value. *Appellate Tax Board. Evidence,* Administrative proceeding, Expert opinion, Value. *Value. Administrative Law,* Evidence.

In a proceeding before the Appellate Tax Board in which the sole issue was the value of certain property in the city of Boston for fiscal years 1980, 1981, and 1982, and in which a witness for the assessors of Boston testified over objection that the board's 1979 fiscal year valuation was almost $10,000,000, the board's 1979 decision, standing alone, did not oblige, or even permit, the board to explain the substantial difference between its determination of fair cash value for 1979 and its determination of a value of $7,105,400 for 1980. [605-606]

In a proceeding before the Appellate Tax Board to determine the value of certain property in the city of Boston for fiscal years 1980, 1981, and 1982, the board was warranted in striking the testimony of an engineer who testified for the assessors of Boston on the depreciated reproduction cost of the improvements to the real estate, where the engineer first visited the property in July, 1982, based his estimates on what he then saw, and assumed erroneously that on January 1, 1979, the facility had the same features and improvements, and where the assessors made no attempt to rectify the obvious errors in the engineer's depreciation estimates. [606-607]

In a proceeding before the Appellate Tax Board to determine the value of certain property in the city of Boston used as a race track, the board's determination of value was supported by substantial evidence. [607-608]

APPEAL from a decision of the Appellate Tax Board.

*Peter Antell,* Special Assistant Corporation Counsel, for Board of Assessors of Boston.

*Alan R. Hoffman (Anne Hoffman* with him) for the taxpayer.

WILKINS, J. The board of assessors (assessors) appeals from a decision of the Appellate Tax Board (board) granting abatements for fiscal years 1980, 1981, and 1982 to Ogden Suffolk Downs, Inc. (Suffolk Downs), on its property which is used as a thoroughbred race track in the East Boston section of the city of Boston. The parties agreed on the appropriate equalized tax rates to correct for disproportionate assessment (G. L. c. 58A, § 14 [1984 ed.]). The sole contest before the board was the fair cash value of the property. We affirm the board's decision.

1. The assessors argue that the board should have taken "judicial" notice of its previous determination of the fair cash value of the premises made in its decision concerning the 1979 fiscal year, the year before the first of the three years involved in this appeal. It would be within the board's authority, and, in certain instances, the board's obligation to take official notice of its own records. Cf. G. L. c. 30A, § 11 (5) (1984 ed.). *Assessors of New Braintree* v. *Pioneer Valley Academy, Inc.,* 355 Mass. 610, 612 n.1 (1969) (although not subject to G. L. c. 30A, the board remains subject to general administrative law principles). The assessors offered a copy of the 1979 fiscal year decision in evidence. The board excluded it "at this time," and the assessors did not make an offer of proof. They did not renew their request later in the hearing. In any event, evidence of the board's valuation for fiscal year 1979 was admitted, over objection, through a witness for the assessors who testified that the board's 1979 fiscal year valuation was almost $10,000,000.

Although the assessors did not raise the point before the board by a request for a ruling and only belatedly raise it here in any substantial way in their reply brief, we consider the assessors' assertion that the board was obliged to explain in its statutory findings and report in this case how it arrived at a fair cash value of almost $10,000,000 for fiscal year 1979 and then settled upon a fair cash value for fiscal year 1980 of only $7,105,400. There are situations, generally involving rulings within an agency's discretion, in which an agency should provide "reasoned consistency" between one administrative

determination and the next involving the same entity. *Boston Gas Co.* v. *Department of Pub. Utils.*, 367 Mass. 92, 104 (1975). See *Boston Gas Co.* v. *Department of Pub. Utils.*, 368 Mass. 780, 802 (1975).

The processes of the Appellate Tax Board do not require or even permit an explanation in this case of the reasons for the difference in the successive determinations. The 1979 fiscal year decision was not explained by findings of fact and rulings of law because apparently no party requested findings and a report pursuant to G. L. c. 58A, § 13 (1984 ed.).[1] The 1979 fiscal year decision was issued in October, 1980. The decision in this proceeding was issued in March, 1985, and only two board members signed both decisions.

A prior agency opinion or decision is not normally admissible to prove some factual issue in dispute or, barring some statutorily directed consequence (see, e.g., G. L. c. 58A, § 12A [1984 ed.]), to shift the burden of persuasion or to create a presumption with which the agency must deal. The problem for the assessors is that the board's earlier decision standing alone, without substantially contemporaneous explanation, did not oblige, or indeed even permit, the board to explain the substantial difference between its 1979 and 1980 fiscal year fair cash value determinations.[2]

2. The board was warranted in striking the testimony of the engineer who testified for the assessors on the depreciated reproduction cost of the improvements to the real estate. The engineer first visited Suffolk Downs in July, 1982, and based his cost and depreciation estimates on what he then saw. He thus assumed that on January 1, 1979, the track facility had

---

[1] Suffolk Downs may have elected not to appeal because, for fiscal year 1979 but not thereafter (see G. L. c. 58A, § 14, inserted by St. 1979, c. 797, § 10), it had the substantial advantage of the cure for disproportionate assessments prescribed in *Tregor* v. *Assessors of Boston,* 377 Mass. 602, cert. denied, 444 U.S. 841 (1979).

[2] The difference could perhaps be easily explained. For example, the board may have accepted one valuation approach in the earlier appeal but in the second appeal no substantial evidence bearing on that valuation method may have been presented.

the same features and improvements as those he saw in July, 1982. The board found, however, that improvements made in 1979 cost approximately $600,000 and that 1980 improvements cost approximately $1,600,000. Moreover, the board noted that significant additional funds, expended for improvements after January, 1981, and before August, 1982, were reflected in the engineer's building values. The board was warranted in concluding that these errors deprived the engineer's depreciation estimates of probative value.

It is doubtful that the board could have developed the engineer's estimates of reproduction costs as of January 1, 1979, by deducting the cost of all post-January 1, 1979, improvements (up to July, 1982). The assessors have not demonstrated by proper calculation here how that could have been done. In any event, the board did not have the duty to sort out the consequences of the expert's blatant error so that some probative value could be given to his cost estimates (even if his depreciation opinion was not credible). That duty rested on the proponent of the witness. The assessors, however, made no such attempt, did not ask for time to do so, and did not ask for a continuance to obtain flaw-free testimony from another witness.

A motion to strike a witness's testimony may properly be allowed only if it lacks any probative value. An agency should strike testimony only if it is based on legally incompetent foundations. See *Assessors of Andover* v. *Innes,* 396 Mass. 564, 565-566 (1986); *Boston Edison Co.* v. *Assessors of Watertown,* 387 Mass. 298, 308 (1982). The allowance of such a motion without furnishing the proponent of the witness the opportunity to rectify such an error might be an abuse of discretion. Here, however, the defect was apparent at least from the time the engineer testified, and Suffolk Downs thereupon moved to strike his testimony. Indeed the assessors must have been aware of post-January 1, 1979, improvements at the time they presented a witness whose report and testimony were based on the fallacious assumption that there had been none.

3. The assessors argue that the board's decision is not sustained by substantial evidence. We do not reassess the facts.

The record evidence supports the board's decision. We consider briefly the assessors' arguments that the board should not have relied on particular evidence before it.

(a) The board was warranted in crediting the testimony of Suffolk Downs's land value expert concerning subsurface soil conditions. The board could properly regard him as qualified to read and interpret reports of test borings. In any event, there was other reliable evidence on which the board could have based its conclusion that subsurface soil conditions were poor. Similarly, the board was warranted in concluding, based in part on the expert's testimony, that easements burdening the premises severely limited the use of the land for purposes other than a race track.

(b) The admissibility of evidence of comparable sales "is largely, although not exclusively, discretionary with the tribunal." *Leen* v. *Assessors of Boston,* 345 Mass. 494, 506 (1963). The board acted within its discretion in treating certain sales as comparable. Any defects in the presentation made by Suffolk Downs's expert went to the weight of his testimony. *Assessors of Lynnfield* v. *New England Oyster House, Inc.,* 362 Mass. 696, 702 (1972). The assessors' extensive challenge to the board's reliance on particular sales as comparable and entitled to weight attempts to reargue matters that were for the board to decide. The same is true of the assessors' complaint that the board should have given more weight to the testimony of their expert on the value of the land.[3]

> *Decision of the Appellate Tax*
> *Board affirmed.*

---

[3] Any issue raised for the first time in an appellant's reply brief comes too late, and we do not consider it.